**William E. DUGAN, et al., Plaintiffs,**

v.

**Arthur W. NICKLA, Defendant.**

**No. 90 C 5380.**

United States District Court,
N.D. Illinois, E.D.

April 25, 1991.

Bernard M. Baum, James Merrill Neuman and Alan H. Auerbach, Baum & Sigman, Ltd., Chicago, Ill., for plaintiffs.

David Anthony Statham and Frank Angelo Moscardini, Jr., Donald A. Shapiro, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

### I. FACTS

Defendant Arthur Nickla had emergency surgery performed on his left knee. Alleging failure to promptly diagnose his knee condition, defendant filed a lawsuit in state court for medical malpractice and, on March 28, 1990, a jury awarded him $140,-

$750.$[1] At the time of his surgery, Nickla was a participant in the Midwest Operating Engineers Welfare Fund (the "Fund"), which paid all of defendant's medical expenses. The Fund was, and still is, an employee welfare benefit plan governed by Employee Retirement Income Security Act of 1974 ("ERISA").

Under the Fund's subrogation provision, Nickla is obligated to reimburse the Fund for any medical and disability payments that he recovers from a third party.[2] As a matter of policy, the Fund requires a participant, and the participant's spouse, to sign a "Subrogation Agreement" whenever it appears that injuries may have been caused by the conduct of a third party. Defendant and his wife signed such a subrogation agreement and acknowledged their obligation to reimburse the Fund for medical expenses and disability benefits resulting from defendant's knee surgery.[3] Pursuant to the subrogation provision, the Fund asserted a lien against Nickla's state court judgment in the amount of $60,690.10 for reimbursement of medical benefits and $8,632.51 for reimbursement of disability benefits.

The parties disagreed as to the amount of money owed under the subrogation provision, and the Fund filed this suit claiming jurisdiction under 28 U.S.C. § 1331—federal question. Plaintiff now moves for summary judgment and, defendant moves for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. Jurisdictional questions must be considered, even if not raised by the parties. Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action"); *see also Wilson v. Civil Town of Clayton, Indiana*, 839 F.2d 375, 384 (7th Cir.1988). Therefore, defendant's motion to dismiss will be resolved before reaching the merits of the summary judgment motion.

## II. SUBJECT MATTER JURISDICTION

Defendant argues plaintiffs' complaint is actually a state law contract claim that is only tangentially related to ERISA and, as such, federal jurisdiction does not exist under ERISA's jurisdictional provisions codified at 29 U.S.C. § 1132. Section 1132(e)(1) extends federal court jurisdiction to "civil actions *under* [ERISA] brought by the Secretary or by a participant, beneficiary, or fiduciary." 29 U.S.C.A. § 1132(e)(1) (West 1985 & Supp.1990) (emphasis added). Furthermore, defendant argues, 29 U.S.C. § 1132(a)(3) is the only ERISA provision that extends jurisdiction to a *fiduciary*. Under § 1132(a)(3), a fiduciary may bring suit only for injunctive or equitable relief—not to recover benefits or monies due.

Plaintiff responds that its cause of action is not brought pursuant to § 1132, but is brought pursuant to 28 U.S.C. § 1331—federal question jurisdiction. Plaintiffs contend that jurisdiction is based upon federal common law, and a claim based upon federal common law can be properly brought under federal question jurisdiction. *See Illinois v. City of Milwaukee, Wisconsin*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) (section 1331 supports claims brought pursuant to federal common law as well as statutory law). Under ERISA, Congress intended that federal courts create federal common law. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948,

1. The jury verdict was set forth as follows:
   (A) The reasonable expense of necessary medical care, treatment and services received and the present cash value of the reasonable expense of medical care, treatment and service reasonably certain to be received in the future ................ $7,000
   (B) The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injury. .................... $56,000
   (C) The disability and disfigurement resulting from the injury. ... $55,000
   (D) The value of earnings lost from September 1, 1982 to July 15, 1983. $22,750
   TOTAL. ..........................$140,750

2. Defendant admits this obligation in Defendant's Statement of Undisputed Material Facts, ¶ 2.

3. Neither plaintiffs nor defendant supply a copy of this agreement with their motion papers. Defendant, however, concedes that his obligation exists under a subrogation agreement. *See supra* note 2.

954, 103 L.Ed.2d 80 (1989) ("Given [ERISA's] language and history, we have held that courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'") (*quoting Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987)). Thus, a litigant may properly bring a claim, which does not fall under 29 U.S.C. § 1132(a)'s grant of jurisdiction, pursuant to 28 U.S.C. § 1331. *See Whitworth Bros. Storage v. Central States, S.E. & S.W. Areas Pension Fund*, 794 F.2d 221, 233–36 (6th Cir.1986); *Soft Drink Industry Local Union No. 744 Pension Fund v. Coca-Cola Bottling*, 679 F.Supp. 743, 744–45 (N.D.Ill.1988) (claim asserting a right created by a federal statute presents a federal question).

It must, therefore, be determined whether resolution of this dispute mandates application of federal law to plaintiffs' contract claim. If the answer is "yes," the claim arises under federal law and jurisdiction is proper under § 1331. The only issue involved in this case is the amount of money due to the Fund under the subrogation provision.[4] Defendant admits the validity of plaintiffs' claim. The sole issue presented is whether plaintiffs' claim for reimbursement of medical expenses and disability is limited to the jury's award of medical expenses or whether the Fund may be reimbursed from the total amount of the verdict regardless of how the jury apportioned the verdict. In short, the question is whether the subrogation provision covers amounts received from third parties for pain and suffering, disability and disfigurement, and lost earnings. At first blush, the controversy appears to be a state law contract dispute subject to state law rules of interpretation. The Fund, however, is an ERISA regulated plan, and ERISA preempts state laws that

"relate to any employee benefit plan." 29 U.S.C. § 1144(a). State law contract claims are preempted by ERISA when the contract relates to employee benefit plans. *See Maciosek v. Blue Cross & Blue Shield United*, 930 F.2d 536, 539 (7th Cir.1991); *Degan v. Ford Motor*, 869 F.2d 889 (5th Cir.1989) (common-law contract claim based upon laws of general application preempted by ERISA); *Anderson v. John Morrell & Co.*, 830 F.2d 872 (8th Cir.1987); *Jackson v. Martin Marietta Corp.*, 805 F.2d 1498 (11th Cir.1986). Since this dispute involves interpretation of a provision of an ERISA benefit plan, ERISA preempts state contract law. Federal common law must be applied and, therefore, plaintiffs' cause of action arises under federal law. Consequently, subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331, federal question, and plaintiffs' motion for summary judgment will be considered.

### III. SUMMARY JUDGMENT[5]

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). The purpose of summary judgment is to determine whether a trial will be necessary. "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986) (emphasis in original). Conversely, when confronted with a motion for summary judgment, the party who bears the burden of proof on a particular issue must affirmatively demonstrate that there is a *genuine* issue of material fact.

4. While both parties discuss a subsequent subrogation "agreement" that defendant Nickla and his wife signed in October of 1986, as earlier noted, neither party included a copy of this agreement in their papers. This motion is decided on the papers before the court and if the "agreement" differs substantially from the "provision," it is the parties' responsibility to inform this court.

5. Defendant has also moved to strike Larry Bushmaker's affidavit, which was submitted by plaintiffs in their summary judgment papers. To the extent that Larry Bushmaker's affidavit is inadmissible, it is not considered in deciding this motion for summary judgment.

*Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1363 (7th Cir.1988) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). When presented with a motion for summary judgment, a court must examine the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Bowyer v. United States Dept. of Air Force*, 804 F.2d 428, 430 (7th Cir.1986).

■ The sole issue presented on summary judgment is the amount of reimbursement that defendant owes the Fund. Plaintiffs argue that defendant owes the Fund $69,322.61: $60,690.10 for medical payments and $8,632.51 for disability payments. Defendant admits owing $8,632.51 for disability payment since he recovered $55,000 for disability and disfigurement. On the amount of medical payments, however, defendant states that he recovered only $7,000, and plaintiffs are entitled only to that amount—not the $60,690.10 claimed. Therefore, defendant argues, plaintiffs are entitled to $15,632.51 less one-third for attorney fees, or a grand total of $10,421.67—the amount that defendant actually recovered for medical and disability expenses.

The Fund's subrogation provision is set forth at Part II, Article IV, Section 7 of the relevant Fund documents. It reads, in pertinent part:

Upon *any recovery* made by an Employee ... from *any* person or persons, party or parties, insurance company, firm or corporation, whether by suit, judgment, settlement, compromise, or otherwise, the Trustees, with or without the filing of a lien as above permitted, *shall be entitled to immediate reimbursement to the extent of benefits paid* ... The Trustees shall be *first reimbursed fully* by such Employee, ... to the extent of

benefits paid ... *from the monies paid* by any person or persons, party or parties, insurance company, firm or corporation and the balance of monies, if any, then remaining from such recovery shall be retained by the Employee.... (emphasis added)

Defendant argues that *res judicata* bars re-litigation of what portion of the verdict is for medical payments and, therefore, plaintiffs cannot re-litigate the $7,000 amount for medical payments. While this may be true, the amount that the jury awarded for medical payments need not be disturbed to settle this dispute. There is no reference in the subrogation provision that states that the monies recovered be for medical payments. Rather, the provision clearly and unambiguously reads: *Upon any recovery.* It does not read, as defendant argues, "upon any recovery of medical expenses." Therefore, even if the jury apportioned 100% of the verdict for disfigurement, plaintiffs would still have a cause of action for complete reimbursement "to the extent of benefits paid." [6]

■ Last, defendant argues that he did not "recover" one-third of the amount awarded by the jury verdict. One-third of the recovery went to his attorney under their fee arrangement. Generally, under the American Rule, a person bears the expenses of his own case. *See Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 932 (7th Cir.1989) (reciting the rule, although interpreting a fee-shifting statute). In this case, however, defendant's verdict benefits the Fund. Had defendant not engaged an attorney and pursued his case, the Fund would not have recovered any of the benefits paid concerning defendant's knee surgery. Since the Fund benefits from defendant's pursuit of his case, one-third reduction of the Fund's share of

---

6. Plaintiffs contend that their interpretation of the subrogation provision may be reviewed by this court only under an arbitrary and capricious standard. Defendant agrees with plaintiffs' standard, but adds that this court may review the decision also if it is motivated by bad faith. Both parties rely upon *Firestone v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Under *Firestone*, the appropriate stan-

dard of review under ERISA cases *arising from a denial of benefits* is de novo unless the benefit plan grants the administrator discretionary authority to determine eligibility for benefits. This is not a case of appeal from a denial of benefits and, therefore, *Firestone* is inapplicable. It is noted, however, that plaintiffs interpretation of the subrogation provision is not arbitrary nor capricious.

the verdict fairly apportions the attorney's fee. Plaintiffs acknowledge this fact in their motion papers. Therefore the reimbursement amount of $69,322.61 is reduced by one-third resulting in a total of $45,752.92.

IT IS THEREFORE ORDERED that:

(1) Defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

(2) Plaintiffs' motion for summary judgment is granted.

(3) Defendant's motion to strike Larry Bushmaker's affidavit is denied.

(4) The Clerk of the Court is ordered to enter judgment in favor of plaintiffs and against defendant in the amount of $45,752.92.