Diane M. CUTTING and Warren
L. Cutting, Plaintiffs,

v.

JEROME FOODS, INC., Defendant.

No. 91–C–456–C.

United States District Court,
W.D. Wisconsin.

Dec. 23, 1991.

Arnold P. Anderson, Hartford, WI, for Diane M. Cutting and Warren L. Cutting.

Bradley C. Lundeen, Hudson, WI, for Jerome Foods, Inc.

## OPINION AND ORDER

CRABB, Chief Judge.

In this civil action plaintiffs challenge defendant's interpretation of its employee benefits plan and seek declaratory relief under 29 U.S.C. § 1132. Defendant refuses to pay the medical bills of plaintiff Diane Cutting until plaintiffs execute a reimbursement agreement pursuant to the subrogation clause in the Jerome Foods, Inc. Health Care Plan, and has filed a counterclaim in which it seeks to enforce the subrogation clause and to require that plaintiffs execute the reimbursement agreement. Because this case involves the interpretation of an employee benefit plan regulated by the Employee Retirement Income Security Act (ERISA), jurisdiction exists pursuant to 29 U.S.C. § 1132 and 28 U.S.C. § 1331.

Defendant has moved for summary judgment on the ground that its interpretation of the Plan's subrogation clause is valid and enforceable under federal law. Plaintiff opposes the motion on two grounds: that material issues of fact exist and that the common law of subrogation precludes defendant from seeking reimbursement before plaintiffs are fully reimbursed for Diane Cutting's injuries.

An order dated September 10, 1991 reflected the parties' agreement that until the court ruled on defendant's motion for summary judgment, 1) plaintiffs would not disburse further funds from the insurance proceeds; 2) plaintiffs would provide defendant with an accounting of the funds paid from the proceeds; and 3) defendant would pay medical bills incurred by plaintiffs after January 20, 1991, in an amount not to exceed the amount of funds remaining from the settle-

ment proceeds. Following the entry of the September 10 order, plaintiffs filed a motion to allow them to pay medical bills from the funds they have received as insurance proceeds. Defendant filed a motion for reimbursement, refusing to disburse any money unless it receives reimbursement from the fund. In an order entered December 5, 1991, I declined to rule on these motions because a decision on defendant's motion for summary judgment would moot them. On December 13, defendant filed a request to enjoin plaintiffs from disbursing any funds received in a settlement against Ford Motor Company.

I conclude that there are no issues of material fact that preclude me from determining the validity and interpretation of the Plan's subrogation clause. I find that ERISA preempts the Wisconsin common law of subrogation and that it bars the courts from creating a federal common law fashioned after Wisconsin's common law of subrogation. Because the Plan grants defendant the discretion to interpret the Plan, I find that defendant's interpretation is not an abuse of discretion: the Plan's subrogation provision is set forth clearly in both the Plan and the Summary Plan Description. Therefore, defendant's motion for summary judgment will be granted, making it unnecessary to address the parties' additional motions.

For the purpose only of deciding defendant's motion for summary judgment, I find the following facts to be undisputed.

## FACTS

Plaintiffs are citizens of Wisconsin. Defendant is incorporated in Wisconsin and has its principal place of business there. Defendant is a non-union employer under 29 U.S.C. § 1002(5) of ERISA and provides a self-funded group health plan to its employees. Defendant is the Plan administrator, Plan sponsor and named fiduciary, and the Plan is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) of ERISA. The Plan states that "[a]ll decisions concerning the interpretation or application

of this Plan shall be vested in the sole discretion of the Plan Administrator." A third party administrator, Travelers Plan Administrators of Minnesota, Inc., processes the claims. At all relevant times, plaintiff Warren Cutting has been an employee of defendant.

During an open enrollment period in 1988, defendant offered benefits coverage for families and individuals for the year 1989. According to the Summary Plan Description, employees must submit enrollment forms within 31 days of becoming eligible in order to enroll formally for health care coverage. Also, the Summary Plan Description provides that if an employee fails to submit an enrollment form, the employee receives individual coverage by default. Warren Cutting did not submit an enrollment form in 1988, and therefore received only individual coverage during 1989. In the 1989 enrollment period, Warren Cutting submitted an enrollment form designating family coverage and received family coverage starting January 1, 1990.

On December 25, 1989, plaintiff Diane Cutting suffered serious injuries in an automobile accident involving an uninsured motorist. Plaintiffs received $126,000 from American Family Insurance in October or November 1990 under their automobile insurance policy covering uninsured motorists. Additionally, plaintiffs sued Ford Motor Company and settled their claim against the company for an undisclosed amount.[1] Diane Cutting's medical bills resulting from her injuries are expected to exceed the amounts she has received from American Family Insurance and Ford Motor Company.[2]

Plaintiffs submitted medical bills to Travelers for payment. Travelers requested that plaintiffs execute a reimbursement agreement pursuant to the Plan's subrogation provision, which reads as follows:

By accepting any Plan payments of benefits arising out of illness, injury or medical condition, an individual (covered employee or dependent) agrees that the Plan shall be subrogated to all claims, demands, actions

1. The terms of the settlement agreement are sealed.

2. This fact is undisputed for the purpose of this motion only.

and rights or recovery of the individual against any third party or any insurer, including Workers' Compensation, to the extent of any and all payments made or to be made hereunder by the Plan. The Plan shall be entitled to commence. an action and try or settle any legal actions it deems necessary in the name of and with the full cooperation of the individual or to intervene in any such actions already commenced by an individual and will be reimbursed by the individual to the extent of any amounts paid or payable, past or future, from any third party by way of settlement or in satisfaction of judgement or agreement.

The individual shall execute and deliver any and all instruments and papers requested by the Claim Administrator and shall do whatever is necessary to protect all of the Plan's rights. As a condition precedent to the payment of benefits hereunder, the individual shall, upon written request, execute a reimbursement agreement of the form to be provided by the Claim Administrator or its representative. The individual shall do nothing to prejudice the rights of the Plan to such reimbursement and subrogation and specifically agrees to notify and consult with the Claim Administrator before commencing any legal action concerning claims against any third party or its insurer relating to benefits paid hereunder.

The Summary Plan Description contains identical language.

Plaintiffs refused to sign the reimbursement agreement. On April 15, 1991, they initiated an action in state court to compel defendant to disburse its funds without subrogation or reimbursement rights until plaintiff Diane Cutting is fully reimbursed for her injuries. On May 15, 1991, defendant removed the case to this court pursuant to federal question jurisdiction. Initially, defendant maintained that Diane did not become eligible to receive benefits until January 20, 1990; it concedes now that her coverage became effective January 1, 1990.

## OPINION

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The opposing party may not rely solely on allegations and denials to defeat a motion for summary judgment, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Billups v. Methodist Hosp. of Chicago,* 922 F.2d 1300, 1302 (7th Cir.1991). If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the opposing party is proper. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. To determine this, courts must "resolve all doubts against the party seeking summary judgment." *Gracyalny v. Westinghouse Electric Corp.,* 723 F.2d 1311 (7th Cir. 1983).

Plaintiffs urge the court to allow a full development of the facts before ruling on an issue that will significantly affect the governance of employee benefit plans. According to plaintiffs, the remaining disputed questions of material fact include: Diane Cutting's current and future injuries and medical costs; the amount of plaintiff's recovery from American Family Insurance and Ford Motor Company; the injuries for which those recoveries represent compensation; and whether Diane has been reimbursed in full for her injuries.

However, no disputed questions of material fact exist on the initial question whether the Plan's subrogation clause can be enforced even though Diane Cutting has not been fully compensated. The extent of her injuries and amount of recoveries from third parties become relevant only if the Plan's subrogation clause is declared invalid or if defendant's interpretation of the clause is an abuse of discretion.

*Preemption*

It is well established that state subrogation laws "relate[ ] to" employee benefit plans and are preempted by ERISA. 29 U.S.C. § 1144(a) (ERISA preempts state

laws that "relate to any employee benefit plan); *FMC Corp. v. Holliday*, 498 U.S. 52, 56, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990) ("Pennsylvania's anti-subrogation law 'relate[s] to' an employee benefit plan."). There is an exception to this rule for state laws regulating insurance, which are "saved" from preemption, 29 U.S.C. § 1144(b)(2)(A), and an exception to that exception: the "deemer" clause, § 1144(b)(2)(B), which forbids the states from "deeming" employee benefits plans to be insurance companies. Thus, self-funded employee benefit plans are exempt from state laws regulating insurance. *FMC Corp.*, 498 U.S. at 60, 111 S.Ct. at 409; *Reilly v. Blue Cross & Blue Shield*, 846 F.2d 416, 425 (7th Cir.1988), *cert. denied*, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988). Although it may seem anomalous to allow state regulation of insured employee benefit plans but not of self-funded plans, that is the result dictated by ERISA. *Reilly*, 846 F.2d at 425 (citing *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985)). Defendant's Plan escapes any Wisconsin subrogation rules because it is self-funded.

*Federal Common Law*

Plaintiff argues that this court should adopt as federal common law the rule that an administrator of an employee benefit plan may not seek subrogation until its beneficiary has been made whole. Under this rule, defendant cannot seek reimbursement for its payment of Diane Cutting's medical bills until she has been fully compensated for her injuries. In essence, plaintiffs are arguing the unlawfulness of a subrogation clause that requires reimbursement before a beneficiary is made whole.

Plaintiffs offer several sound reasons for creating a "make-whole" federal common law rule of subrogation, which happens to be the doctrine of Wisconsin as well as of several other states. *See Garrity v. Rural Mutual Ins. Co.*, 77 Wis.2d, 537, 541–544, 253 N.W.2d 512, 514 (1977) (listing treatises and states that support the make-whole rule). First, since the purpose of subrogation is to prevent unjust enrichment, the general rule is that "subrogation does not arise until the debt has been fully paid." *Id.* at 541, 253 N.W.2d at 514. Without this rule, a surety who is subrogated before its insured is fully compensated becomes a competitor with the insured for reimbursement. *Id.* at 542, 253 N.W.2d at 514. This competition is obvious when a surety's obligation is limited. Along with other states, Wisconsin has decided that "where either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume." *Id.* Plaintiffs argue that because Diane Cutting has not been made whole, the equities favor prohibiting subrogation until she is compensated in full. Otherwise, plaintiffs' payment of premiums to American Family Insurance will be solely for the benefit of defendant.

Because ERISA does not address the enforceability of subrogation provisions expressly, plaintiffs assert that this court may fashion federal common law to protect the interests of plan participants. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1988); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987) (federal courts may create federal common law where ERISA is silent). Although the Court of Appeals for the Seventh Circuit has not ruled on the question directly, the rationale behind the Supreme Court's holding in *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, appears to preclude the adoption of a make-whole subrogation rule as federal common law for self-funded employee benefit plans governed by ERISA. In *FMC Corp.*, the Supreme Court held that ERISA exempted self-funded plans from a Pennsylvania statute that prohibited insurers and employee benefit plans from exercising their subrogation rights. Relying on ERISA's goals of producing uniformity and eliminating state interference in self-funded employee benefit plans, the Court reasoned that "[a]pplication of differing state subrogation laws to plans would therefore frustrate plan administrators' continuing obligation to calculate uniform benefits nationwide." *FMC Corp.*, 498 U.S. at 60, 111 S.Ct. at 409. Although the Court did not discuss whether a federal common law might be created to

qualify a Plan's subrogation rights, its reasoning appears to preclude any federal common law that would alter the terms of a written employee benefit plan. Modeling a federal common law upon state subrogation law would hamper the "calculat[ion] of uniform benefits nationwide," since the states do not treat subrogation clauses identically, and a plan's subrogation provision would be enforceable in one federal court but not another.

Plaintiffs point to *Wahl v. Northern Telecom, Inc.,* 726 F.Supp. 235 (E.D.Wis.1989) for support of their proposal for creation of federal common law. In *Wahl,* the court refused to enforce a subrogation clause against an employee benefit plan's beneficiary because the plan was not signed by the beneficiary and did not expressly require the beneficiary to repay. The court stated that it would not reach the question of "what, if any, federal limitations should exist on a self-insured employee benefits plan's rights to subrogation against an insured ... because the terms of the Plan in question do not provide the Plan with subrogation rights against [the beneficiary]." *Wahl,* 726 F.Supp. at 242. However, the court added in a footnote that if it "had to answer this question it would hold that federal common law should state that a self-insured plan can have no greater rights to subrogation against an insured than provided by state law." *Id.* n. 4. The court reasoned that allowing self-insured plans to escape regulation of "non-core ERISA matters" would impede Congress's goal of protecting beneficiaries and would lead to a lack of uniformity of regulation between insured and self-insured plans. *Id.*

Any force *Wahl* might have had has been undermined by *FMC Corp.,* 498 U.S. 52, 111 S.Ct. 403. It is true, as plaintiffs argue, that the consequence of the *FMC Corp.* holding is that insured plans will be "open to indirect regulation while [self-funded plans] are not." *Metropolitan Life,* 471 U.S. at 747, 105 S.Ct. at 2393. However, the Supreme Court has interpreted ERISA as creating just such a distinction. *Id.* Whether the distinction is a wise one is a question for Congress.

■ ERISA does not require employers to offer any benefits and does not dictate the terms of welfare benefit plans. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983); *Ryan v. Chromalloy American Corp.,* 877 F.2d 598, 603 (7th Cir.1989) (employer may reserve right to terminate welfare benefits); *Young v. Standard Oil Co.,* 849 F.2d 1039, 1048 (7th Cir.1988), *cert. denied,* 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988) (beneficiaries cannot "attack[ ] the substantive merits of the severance plan); *McGann v. H & H Music Co.,* 946 F.2d 401, 407 (5th Cir.1991) ("Congress did not intend that ERISA circumscribe employers' control over the content of benefits plans"); *Hamilton v. Air Jamaica, Ltd.,* 945 F.2d 74, 78 (3rd Cir.1991) (ERISA creates no substantive requirements for employee welfare benefit plans and employer can provide benefits on case by case basis); *Musto v. American Gen. Corp.,* 861 F.2d 897, 911 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989) (company does not act as fiduciary in deciding what terms of benefits plan will be).

■ Rather than regulating the substance of benefits plans, ERISA regulates the administration, disclosure and reporting of benefit plans to ensure that employees receive the benefits promised to them in writing. *McGann,* 946 F.2d 401; *Hamilton,* 945 F.2d at 78. This approach retains the employer's flexibility in designing plans and also protects the beneficiaries' interest by holding employers to the written terms of the Plan. Regardless of state public policy, "ERISA preempts state law and lets a health and welfare plan draft its own rules." *Sisters of the Third Order of St. Francis v. Swedish-American Group Health Benefit Trust,* 901 F.2d 1369 (7th Cir.1990).

■ Because ERISA's primary method of protecting beneficiaries is to ensure that they receive promised benefits, there is no need to fashion an equitable remedy under ERISA "where there is no violation of ERISA under the written terms of the plan." *Cummings By Techmeier v. Briggs & Stratton Retirement Plan,* 797 F.2d 383, 385 (7th Cir.1986), *cert. denied,* 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 703 (1986) (refusing to impose con-

structive trust where there were no violations of the benefit plan's written terms or ERISA fiduciary duties). Creating a federal common law "make-whole" rule of subrogation would substantially change the design of defendant's Plan. To do so would be tantamount to dictating the substance of defendant's Plan, and would have the effect of allowing state law to govern in an area in which state law is preempted.

Other courts have reached a similar conclusion. *See Provident Life & Accident Ins. Co. v. Linthicum,* 930 F.2d 14 (8th Cir.1991) (ERISA allows subrogation clause to be enforced regardless whether beneficiary made whole); *Dugan v. Nickla,* 763 F.Supp. 981, 984 (N.D.Ill.1991) (ERISA plan subrogation clause to recover medical payments is enforceable against all money recovered by beneficiary, whether or not for medical expenses); *General Business Forms, Inc. v. Thornburg,* 1989 WL 103382 at *6, 1989 U.S. Dist. LEXIS 10192, at *16 (N.D.Ill.1989) (finding that ERISA preempts Illinois anti-subrogation law but that terms of policy revived it); *Pugh v. Wilson,* 693 F.Supp. 1096, 1102 (S.D.Fla.1988) (ERISA preempts Florida collateral source statute insofar as it would prohibit the enforcement of employee benefit plan's subrogation clause).

▮ Plaintiffs argue that allowing defendant to enforce the subrogation provision will be equivalent to saying that defendant is above the law. Plaintiffs liken the Plan to a contract of adhesion, arguing that defendant did not bargain with its employees regarding the Plan's terms and that plaintiffs were faced with the choice of either accepting the Plan "as is" or going without any health insurance. However, defendant has no fiduciary duty to its employees when it determines the terms of its welfare benefits plan, *Young v. Standard Oil Co.,* 849 F.2d at 1045. Plaintiffs could have sought health coverage elsewhere. Furthermore, as defendant points out, ERISA imposes a fiduciary duty on plan administrators to follow the plan's terms. An administrator's denial of benefits is subject to *de novo* review by federal courts, unless the plan gives the administrator discretion to determine benefits and interpret the plan, in which case its decision is

subject to a more deferential review. *See* 29 U.S.C. §§ 1101 *et seq.* (establishing responsibilities of fiduciaries). Thus, there are some restraints on plan administrators.

*Standard of Review*

Once it is determined that a self-funded employee benefit plan's unqualified subrogation clause is not unlawful in and of itself, the next step in the analysis is to determine whether defendant's interpretation of *this* Plan's subrogation clause can be upheld.

▮ Defendant argues that the standard of review for its interpretation of the Plan is deferential, rather than *de novo,* because the Plan grants the administrator sole discretion to interpret the terms of the plan. *Firestone,* 489 U.S. at 111, 109 S.Ct. at 954 ("deferential standard of review appropriate when a trustee exercises discretionary powers"); *Fuller v. CBT Corp.,* 905 F.2d 1055, 1058 (7th Cir.1990) (abuse of discretion standard appropriate where trustee had discretion to interpret plan).

Plaintiffs offer several arguments against a deferential standard of review. Citing *Dugan v. Nickla,* 763 F.Supp. 981, plaintiffs assert that deferential review is appropriate only for denial of benefits, not for declaratory judgments. In *Dugan,* the court stated in a footnote that the *Firestone* deferential standard was restricted to denial of benefits, but it added that the employer's interpretation of its plan was not arbitrary and capricious, which indicates a deferential standard. 763 F.Supp. at 984 n. 6. As defendant points out, in *Dugan* the plaintiffs sought to enforce a subrogation provision against a beneficiary that had recovered a damage award against a doctor in a malpractice action. The court upheld the plaintiff's interpretation of the subrogation clause that allowed reimbursement not only from damages awarded to the beneficiary for medical expenses, but also for damages awarded for disfigurement, with an amount subtracted for attorneys' fees. 763 F.Supp. at 982. *Dugan* supports defendant's position that it can seek reimbursement from all the funds plaintiff receives from third parties.

Plaintiffs argue that a less deferential standard of review is appropriate because defendant has a conflict as Plan administrator between the beneficiaries' interest in receiving benefits and the Plan's interest in preserving assets. Because of this conflict, plaintiff asserts, defendant is biased toward denying benefits, and thus its decisions should be reviewed with more scrutiny. In *Firestone*, 489 U.S. at 115, 109 S.Ct. at 956, the Supreme Court stated that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion." It did not hold that a different standard applies when a conflict exists. Rather, the conflict must be taken into account during a court's deferential review. Additionally, the fact that an employer administers its own employee benefits plan does not automatically create a conflict of interest that would warrant a *de novo* review if the Plan grants that employer total discretion to interpret the Plan. *See* 29 U.S.C. § 1102(a)(1) and (2); 29 U.S.C. § 1102(c)(1) (allowing person to hold more than one fiduciary position).

In addition to asserting a conflict of interest, plaintiffs charge that defendant has acted in bad faith in refusing to pay any money before securing a reimbursement agreement and in requiring reimbursement from all sources. However, defendant's refusal to pay is based upon its reading of the Plan's subrogation clause: it seeks to enforce the clause as it has interpreted it. Seeking to enforce a contractual right cannot rise to the level of bad faith. Further, there is no merit to plaintiffs' assertion of bad faith based on defendant's change from its initial position that Diane Cutting was not eligible for benefits until January 20, 1990. That defendant has changed its position upon a closer review of the Plan is not bad faith; defendant has acknowledged its error, and has admitted its liability for benefits beginning January 1, 1990.

Finally, plaintiffs assert that a less deferential review is appropriate because defendant acted in bad faith by changing its benefits plan and requiring employees to "opt-in" for family benefits, even if those employees had carried family coverage under the previous benefits design. However, the courts are not empowered to design benefit plans; they can only ensure that employers act in accordance with the plans they implement. In any event, there are legitimate reasons for automatically assigning individual coverage for employees who do not return formal enrollment information. It is reasonable to assume that an employee will want coverage for himself, but it may not be reasonable to assume that an employee also wants coverage for his family. His family may be covered by separate insurance—perhaps through his spouse's benefit plan. Defendant could have designed a plan in which an employee who did not make a formal choice of coverage would not receive *any* coverage. Instead, defendant chose single coverage as a default, a choice well within its power to make.

Furthermore, that plaintiffs were unaware of the Plan's enrollment and subrogation provisions does not suspend the Plan's force. Although Warren Cutting stated in his affidavit that no one explained the subrogation provision to him, he does not allege that he was not given a copy of the Summary Plan Description or that he did not have access to the written Plan. Plaintiffs deny that Warren Cutting was informed of the requirement that he "opt-in" for family coverage, but they do not contest defendant's proposed finding of fact that this information was disseminated to employees. Plaintiffs do not explain why Warren Cutting was not aware of the Plan's requirements. If they are asserting that he did not read the Plan Summary or other materials, this does not create a dispute as to whether defendant breached its fiduciary duty to disseminate an understandable, written Summary Plan Description. 29 U.S.C. § 1102(a)(1) (plan must be "established and maintained pursuant to written agreement); 29 U.S.C. § 1022(a)(1) (Summary Plan Description must be accurate and understandable). Ignorance of a contract's terms is not a defense to its enforcement. Defendant does not have a duty to give individualized advice or information to each employee regarding its benefits plan.

*Cummings By Techmeier,* 797 F.2d at 387 ("'fiduciaries are not. expected to provide individualized attention to participants'") (quoting *Lee v. Union Elec. Co.,* 606 F.Supp. 316, 321 (E.D.Mo.1985)). Additionally, the Plan need not describe every possible consequence that might flow from the subrogation clause. *Lorenzen v. Employees Retirement Plan of Sperry & Hutchinson Co., Inc.,* 896 F.2d 228 (7th Cir.1990).

For the reasons discussed above, I am not persuaded by plaintiffs' arguments that a less deferential review is required. The Plan makes it explicit that sole discretion to interpret the Plan is placed in the defendant as the Plan administrator. Therefore, I will review defendant's interpretation deferentially, and will affirm it unless the interpretation is an abuse of discretion. *Fuller,* 905 F.2d at 1058 (abuse of discretion means "not just clearly incorrect but downright unreasonable").

*Interpretation of the Plan's Subrogation Provision*

The Plan's subrogation provision provides for subrogation for "*all* rights or recovery . . . against *any* third party or *any* insurer . . . to the extent of *any and all* payments made or to be made by the Plan." (Emphasis added). Plaintiffs assert that this provision does not provide expressly for subrogation in the event that plaintiffs are not made whole, distinguishing this Plan's subrogation provision from the one in *Dugan,* 763 F.Supp. at 984, which provided

> Upon any recovery . . . from any person . . . insurance company, whether by suit, judgment, settlement, compromise, or otherwise, the Trustees . . . shall be entitled to immediate reimbursement to the extent of benefits paid . . . The Trustees shall be first reimbursed fully by such Employee, . . . to the extent of benefits paid . . . from the monies paid by any person . . . and the balance of monies, if any, then remaining from such recovery shall be retained by the Employee . . .

■ Plaintiffs are not persuasive in their attempts to distinguish defendant's Plan's clause from the clause in *Dugan.* The import of both clauses is that after paying benefits, the Plan has first claim to any money recovered from third parties. Neither clause makes the right to subrogation subject to the condition that beneficiaries be reimbursed in full for their injuries. The Plan's requirement that plaintiffs sign a reimbursement agreement as a "condition precedent" to receiving benefits is equally clear. Under a deferential review standard, I cannot find that defendant's interpretation of its Plan is an abuse of discretion.

■ Plaintiffs argue that the subrogation clause is unenforceable against the money recovered from plaintiff's uninsured motorist insurance policy because plaintiff's insurance carrier is not a third party within the meaning of the Plan's subrogation provision. However, the Plan provides expressly that it is subrogated to claims against any insurer. Additionally, the plain meaning of "third party" includes any entity that is not a party to an agreement, that is, in this case, any party other than the defendant and plaintiff. In any event, defendant's interpretation of this provision is not an abuse of discretion, and therefore will be affirmed.

■ I conclude that defendant may enforce its subrogation rights against plaintiffs and require them to execute a reimbursement agreement before receiving any payment from the Plan. There remains the question whether defendant can recover the money received by plaintiffs that represent attorneys' fees. Although neither party has addressed this issue, I conclude that the Plan's reimbursement clause does not include amounts attributable to attorneys' fees incurred by plaintiffs in pursuit of their claim against Ford. *See Dugan,* 763 F.Supp. at 984–85. Holding otherwise would allow defendant not only to reap the rewards of plaintiffs' legal action against Ford, but would allow it also to receive attorneys' fees although it did not incur any legal costs in pursuing the claim against Ford. As the court stated in *Dugan,* 763 F.Supp. at 984, if plaintiffs had not "engaged an attorney and pursued [their] claim, the Fund would not have recovered any of the benefits paid." Therefore, the only issue remaining in this case is the extent to which plaintiffs' recovery against Ford represents attorneys' fees.

This decision to uphold defendant's interpretation of the Plan's subrogation clause makes it unnecessary to address defendant's arguments that subrogation should be allowed to prevent plaintiffs from being unjustly enriched or that plaintiffs are not entitled to a jury trial.

### ORDER

IT IS ORDERED THAT defendant's motion for summary judgment is granted. Plaintiffs are directed to execute the reimbursement agreement. Defendant may seek reimbursement from the insurance proceeds and from the settlement with Ford, except for that portion of the settlement funds that represent attorney fees.