The TRUSTEES OF HOTEL EMPLOY-
EES AND RESTAURANT EMPLOY-
EES INTERNATIONAL UNION WEL-
FARE FUND, Plaintiff,

v.

Katherine KIRBY (Guardian of Kimberly
Taylor, a Minor);  Kimberly Taylor;
and Doe I, Defendants.

No. CV–S–94–148–PMP (RLH).

United States District Court,
D. Nevada.

June 26, 1995.

940

Diana L.S. Peters, Feder & Associates, P.C., Washington, DC, Thomas L. Pursel, Thomas L. Pursel, Ltd., Las Vegas, NV, for plaintiff.

Wayne J. Hardy, Hardy & Hardy, Las Vegas, NV, for defendants.

## ORDER

PRO, District Judge.

Before the Court is the Defendants' Motion for Summary Judgment (# 20), filed April 3, 1995. Plaintiffs filed their Opposition to Defendants Motion for Summary Judgment (# 22) on May 15, 1995. Defendants filed their Reply (# 23) on June 14, 1995.

### I. Background

Plaintiffs are the trustees ("Trustees") of the Hotel Employees and Restaurant Employees International Union Welfare Fund (the "Fund"), a self-funded multiemployer employee health benefit "Plan" governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq. ("ERISA"). Defendant Katherine Kirby ("Kirby"), the mother and guardian of Kimberly Taylor ("Kimberly"), a minor child, was a participant in Plan Unit 150, a unit of the Fund that provides benefits to covered employees and their families in Las Vegas.

In July 1993, a car struck Kimberly as she was crossing the street. Kimberly suffered a head injury, multiple rib fractures, a broken left clavicle, a broken left leg, and multiple abrasions. She has received several skin graft procedures and may need corrective surgery.

The Fund paid medical benefits relating to the care and treatment of the child in the amount of $20,798.74. As a condition to receiving those benefits, as required by the Plan, Kirby executed a Reimbursement and Assignment Agreement ("Reimbursement Agreement") in which she agreed to reimburse the Fund for benefits paid to or on behalf of Kimberly "upon recovery of damages from another person or insurance company" up to the full extent of benefits paid.[1]

Kirby, on behalf of her daughter, pursued a claim against the driver of the car. On the advice of her attorney, she settled her claims for $100,000.00, which represented the limits of the driver's motor vehicle coverage. Kirby now refuses to reimburse the Fund, as required by the Reimbursement Agreement.

The Trustees filed this action under ERISA, seeking reimbursement in the amount of $20,798.74 under the Reimbursement Agreement and the Subrogation article of the Plan.[2] See Complaint (# 1), filed February 16, 1994. Defendants filed a Counterclaim (# 5) on February 24, 1994, seeking declaratory relief as to whether Plaintiffs are entitled to any reimbursement under the applicable law.

Defendants now seek summary judgment, contending that the Fund is not entitled to any reimbursement because Kimberly has not been fully compensated for her injuries.

## II. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Zoslaw v. MCA Distributing Corp., 693 F.2d 870, 883 (9th Cir.1982), cert. denied, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24,

---

1. The Reimbursement Agreement states in part:

In consideration of payments made, or to be made, to, or on behalf of, the participant, or the participant's spouse or other dependents, by the Hotel & Restaurant Employees International Union Welfare Fund ("HEREIU"), because of injury(ies) sustainted [sic] from a (an) motor vehicle accident occurring on July 5, 1993, in Las Vegas, Clark [County], Nevada, the undersigned agrees to reimburse the said Welfare Fund for all such payments made, upon recovery of damages from another person or insurance carrier; and I/we hereby assign to the HEREIU Welfare Fund all rights under the Plan, to the full extent of such payments made. I/we further agree to do whatever is necessary to enable the Fund to exercise its rights of subrogation, and to do nothing to prejudice the Fund from said recovery. I/we also further agree to hold the proceeds of the recovery in trust for the Fund, until such time as reimbursement is made to the Fund.
See Reimbursement Agreement, Exhibit 2 to Plaintiff's Opposition (# 22).

2. Article 33 of the Plan states in part:

SUBROGATION
This Plan shall recover the amount of benefits it pays on behalf of Participants and their Eligible Dependents for medical, hospital, dental and vision care Expenses resulting from an accident for which someone else (a third party) is legally responsible and required to pay.
In the case of claims involving third-party liability, the Plan will pay benefits under the following conditions: (a) The Person (and his lawyer if he or she has one) must provide the Plan with written notarized subrogation documents in which the Person agrees to repay the Plan the amount of benefits the Plan pays on a claim out of any recovery of expenses he receives. The Plan will not be entitled to repayment of more than the benefits it pays on a claim or more than the amount a Person receives in recovery.
. . . .
(d) If a claim is for a minor child, the child's parent or guardian must sign the required documents on behalf of the child.

106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

■ If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968), *reh'g denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); *Commodity Futures Trading Com. v. Savage*, 611 F.2d 270 (9th Cir.1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Board v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979), *reh'g denied*, 441 U.S. 968, 99 S.Ct. 2420, 60 L.Ed.2d 1074 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

■ A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305–06 (9th Cir.1982); *Admiralty Fund v. Jones*, 677 F.2d 1289, 1293 (9th Cir.1982).

■ All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's

claims. *Admiralty Fund v. Tabor*, 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2554 (quoting Fed.R.Civ.P. 1). *See also Avia Group International, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed.Cir.1988).

## III. Discussion

### A. Standard of Review

■ The Court reviews denial of benefits under an ERISA plan under the *de novo* standard unless the Plan gives the administrator authority to exercise discretion in determining eligibility or construing Plan terms. *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 537 (9th Cir.1990), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990), *reh'g denied*, 498 U.S. 1074, 111 S.Ct. 803, 112 L.Ed.2d 863 (1991) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989)); *see Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1471 (9th Cir.1993). If the Plan gives the administrator discretion, the Court must determine whether the action or interpretation of the Plan administrator was "arbitrary, capricious, made in bad faith, not supported by substantial evidence or erroneous as a matter of law." *Id.* at 536 (quoting *Johnson v. District 2 Marine Engineers Beneficial Association–Associated Maritime Officers, Medical Plan*, 857 F.2d 514, 516 (9th Cir.1988).

Although this is not a denial of benefits case, the same rules should apply. *See Sanders v. Scheideler*, 816 F.Supp. 1338, 1342 (W.D.Wis.1993), *aff'd without op.*, 25 F.3d 1053 (7th Cir.1994) (applying *Firestone* to interpretation of subrogation clause).

■ The Fund contends the Court should review its decision under the arbitrary and capricious standard. The Fund points to the language in the Plan under the heading

"Subrogation" that "there may be special circumstances in which full reimbursement is not required by the Trustees." The Plan continues: "In determining whether or not full reimbursement will be required, the Trustees may consider such factors as insufficient recovery, extent of disability and lost wages, attorney fees, expended net recovery to the Person or Eligible Dependent, and other relevant factors. . . ." Plan, Article 33, Subsection (h).

This permissive language gives the Trustees discretion to determine eligibility for special consideration regarding reimbursement.[3] As the language meets the *Firestone* threshold, *see Kunin*, 910 F.2d at 537, the Court will review the issues under an arbitrary and capricious standard.

## B. Request for Special Consideration

■ Under Subsection (h) of Article 33, the Trustees may consider certain factors, described above, when determining if reimbursement is appropriate in special circumstances. According to the Fund's Summary Plan Description ("SPD"), the Plan participant must make a request in writing for such special consideration.

The Defendant made such a request in writing for special consideration, as provided by Subsection (h), by letter dated September 16, 1993. *See* Exhibit B to Defendants' Motion (# 20). The Defendants now assert that the Trustees improperly denied this request.

Under the terms of the Plan, the Trustees are not required to compromise their claims for full reimbursement. *See* Exhibit 1 to Plaintiff's Opposition. Furthermore, the SPD explains that full reimbursement is expected unless "this is not possible, for example, where the recovery is insufficient to reimburse the Plan for the full amount of the benefits paid." The SPD further provides that "[a]ny deduction from a recovery for out-of-pocket medical expenses and lost wages *must* be fully documented, and approved by the Fund." *See* Summary Plan Description (emphasis in original).

Defendants show no such documentation except the affidavits regarding the extent of pain and suffering. Defendants do not indicate, by affidavit or otherwise, that they submitted the appropriate documents for the consideration of the Trustees. Defendants also do not offer any evidence to support the assertion that the Trustees did not consider the circumstances of this particular claim. To the extent that Defendants are challenging the Trustees' refusal to waive the lien, the Court finds that Defendants have not sustained their burden under Rule 56. Accordingly, the Court finds no merit to the assertion that the Trustees improperly denied their request for special consideration.

## C. Make–Whole Doctrine

■ ERISA is silent on the issue of subrogation agreements. *Hotel Employees and Restaurant Employees International Union Welfare Fund v. Gentner*, 815 F.Supp. 1354, 1357 (D.Nev.1993), *aff'd*, 50 F.3d 719 (9th Cir.1995). When ERISA is silent on an area of employee benefit law, courts may develop a federal common law of rights and obligations under ERISA-regulated plans. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987)); *see also Davidowitz v. Delta Dental Plan, Inc.*, 946 F.2d 1476, 1480 (9th Cir.1991).

In developing federal common law, the Court may borrow from state common law, *Hotel Employees and Restaurant Employees International Union Welfare Fund v. Gentner*, 50 F.3d 719, 721 (9th Cir.1995), and should consider the underlying policies and objectives of ERISA. *Davidowitz*, 946 F.2d at 1480.

■ Defendants urge the Court adopt as federal common law the make-whole doctrine, a common law rule precluding an insurer from exercising a right of reimbursement until the insured's entire loss has been paid. This would preclude the Fund from

---

**3.** While the Defendants dispute the discretionary authority of the Trustees, they do not provide

sections of the Plan indicating otherwise.

exercising its subrogation rights to recover reimbursement for payments made under the Plan because Kimberly did not recover full compensatory damages.[4] The Court is guided in this case by the Supreme Court decision in *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), as well as several decisions from other jurisdictions involving the make-whole doctrine.

In *FMC Corp. v. Holliday*, the minor daughter of a plan member was seriously injured in a car accident. *FMC Corp. v. Holliday*, 498 U.S. 52, 54–5, 111 S.Ct. 403, 405–6, 112 L.Ed.2d 356 (1990). The self-funded plan paid over $178,000 in medical benefits on the express condition that the member would reimburse the plan if he recovered on a claim in a liability action against a third party. *Id.* The plan member brought a negligence claim against the driver and eventually recovered a settlement. *Id.* at 55, 111 S.Ct. at 406. The plan sought reimbursement, but the plan member asserted the state Motor Vehicle Financial Responsibility Law precluded such subrogation and reimbursement. *Id.* The Supreme Court, considering clear congressional intent to exempt ERISA plans from direct state regulation, ruled in favor of the plan, holding that ERISA preempted the state antisubrogation law to the extent the state law impedes or bars a self-funded ERISA plan from enforcing its subrogation requirements. *Id.* at 64, 111 S.Ct. at 410.

The District Court in the Western District of Wisconsin relied on *FMC Corp.* in refusing to adopt the make whole doctrine as federal common law in *Cutting v. Jerome Foods, Inc.*, 820 F.Supp. 1146 (W.D.Wis.1991), *aff'd*, 993 F.2d 1293 (7th Cir.1993). In that case, a plan participant's spouse was severely injured and incurred $90,000.00 in medical expenses, with additional expenses anticipated. *Cutting*, 820 F.Supp. at 1149. Her estimated total loss was valued at $1,000,000. *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1294 (7th Cir.1993). She recovered $126,000 on an uninsured motorist policy, and further recovered an additional $500,000 on a products liability claim. *Id.* The plan refused to pay the medical expenses because the plan participant would not execute a subrogation agreement promising to reimburse the plan from the recovery. *Cutting*, 820 F.Supp. at 1150. The plan participants sought a declaratory judgment. *Id.* at 1148.

The plan participant asserted that the district court should adopt the make-whole doctrine, a Wisconsin common law rule, to preclude the plan's right to reimbursement. The district court, discussing *FMC Corp.*, stated that although the Supreme Court "did not discuss whether a federal common law might be created to qualify a Plan's subrogation rights, its reasoning appears to preclude any federal common law that would alter the terms of a written employee benefit plan." *Cutting*, 820 F.Supp. at 1151–52. The court continued:

> Creating a federal common law "make-whole" rule of subrogation would substantially change the design of defendant's Plan. To do so would be tantamount to dictating the substance of defendant's Plan, and would have the effect of allowing state law to govern in an area in which state law is preempted.

*Cutting*, 820 F.Supp. at 1153. The district court declined to adopt the make-whole rule as federal common law. *Id.; accord Serembus v. Mathwig*, 817 F.Supp. 1414, 1423 (E.D.Wis.1992) (reimbursement ordered under plan where dependent of participant received settlement from third party).

The Seventh Circuit affirmed the district court's decision in *Cutting* for three reasons: (1) the rule, as a principle of state law, has been preempted by ERISA; (2) the rule was neither a universal nor even a predominant principle; and (3) even if it were universal, it is only a rule of interpretation, which can be overridden by clear language in the plan.[5]

---

4. Defendants offer the affidavits of J. Mitchell Cobeaga, Esq., and Allan R. Earl, Esq., as to whether Kimberly received full compensation. Both stated in their affidavits that they would value pain and suffering in a case similar to Kimberly's at $250,000 to $300,000. Both stated that the $100,000 settlement received against the driver was grossly inadequate. The Plaintiffs do not dispute these contentions.

5. The plan in *Cutting* stated that the plan shall be subrogated to "all claims" by the covered individual against a third party to the extent of "any

*Cutting,* 993 F.2d at 1296–99; *see also Provident Life & Acci. Ins. Co. v. Linthicum,* 930 F.2d 14 (8th Cir.1991) (holding state subrogation law preempted by ERISA); *McIntosh v. Pacific Holding Co.,* 992 F.2d 882 (8th Cir. 1993), *reh'g denied,* 1993 U.S.App. LEXIS 15412 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 441, 126 L.Ed.2d 375 (1993) (reimbursement ordered although minor severely injured in car accident and recovered less than total damages).

Defendants assert the Plan language is ambiguous as it does not address the priority of the Plan's rights to proceeds of a limited insurance settlement. However, the language in the Plan in this case provides that the Plan will pay benefits only under certain conditions, including one in which the participant "agrees to repay the Plan the amount of benefits the Plan pays on a claim out of *any* recovery of expenses he receives." *See* Plan (emphasis added). The clear language of the Plan demands that any monies received from any recovery be applied toward reimbursement of Plan payments. *See Cutting,* 993 F.2d at 1299.

Defendants rely on *Sanders v. Scheideler,* 816 F.Supp. 1338 (W.D.Wis.1993), *aff'd without op.,* 25 F.3d 1053 (7th Cir.1994). The plan participant and his wife and three children all sustained injuries in an automobile accident caused by a third party who had liability insurance coverage. *Sanders,* 816 F.Supp. at 1341. All were eligible for benefits under the plan. *Id.* However, the plan had subrogation rights limited to third-party payments that duplicated medical benefits paid by the fund. *Id.* at 1334. The SPD, in contrast, contained a provision that gave the plan a priority right to recover all benefits paid in the event of negligence or wrongful intentional conduct. *Id.* The third party's liability insurer, unsure of its obligations, filed an action seeking a declaration of rights to the insurance proceeds. *Id.* at 1340.

The original action included several theories of recovery for the various injuries of the five family members. *Sanders,* 816 F.Supp. at 1344. As a result, the district court was unable to determine how the insurance proceeds were intended to be allocated under the settlement agreement. *Id.* at 1345. Further, the plan's subrogation provision did not address the priority of the plan's right of reimbursement in the event of competing claims. *Id.* The court therefore fashioned a "default priority rule," using the make-whole doctrine. *Id.* at 1346. Under this rule, the plan could not assert its subrogation rights until the beneficiaries were fully compensated. *Id.*

The Court finds the case of *Sanders v. Scheideler* inapplicable. The district court emphasized that it was not supplanting or dictating the terms of the plan. *Sanders,* 816 F.Supp. at 1347. Instead, the district court used the doctrine only as a default priority rule, relying upon the following facts: (1) the plan and the SPD were in conflict; (2) the plan did not assert a priority to all monies recovered by a participant or beneficiary from a third party; and (3) the settlement failed to allocate proceeds. *Id.* at 1345–47. None of these conditions are present here. The Court will therefore join the majority of those courts which reject the make-whole doctrine as federal common law. *See Cutting,* 993 F.2d at 1299; *Serembus,* 817 F.Supp. at 1423; *see generally FMC Corp.,* 498 U.S. at 64, 111 S.Ct. at 410. The Court finds that the Trustees did not act arbitrarily and capriciously in failing to consider the make-whole doctrine in accordance with the clear terms of the Plan.

IT IS THEREFORE ORDERED THAT the Defendants' Motion for Summary Judgment (# 20) is DENIED.

and all payments" made by the plan. *Cutting,* 993 F.2d at 1299.