Dorothy E. TRAVITZ, Plaintiff,

v.

NORTHEAST DEPARTMENT ILGWU HEALTH AND WELFARE FUND and ILGWU Eastern States Health and Welfare Fund, Defendants.

Civ. A. No. 1:CV–92–0922.

United States District Court, M.D. Pennsylvania.

April 9, 1993.

Richard C. Angino, Richard A. Sadlock, Angino & Rovner, Harrisburg, PA, for Dorothy E. Travitz.

Charles W. Johnston, Jr., Charles W. Johnson, Handler, Gerber, Johnston & Aronson, Camp Hill, PA, for Northeast Dept. ILGWU Health and Welfare Fund, and ILGWU Eastern States Health and Welfare Fund.

### MEMORANDUM

RAMBO, Chief Judge.

Before the court are the parties' cross-motions for summary judgment. The motions are ripe for disposition.

### Background

The following facts are essentially undisputed. Plaintiff Dorothy Travitz is a Pennsylvania resident. In 1990 she was an employee of BR Apparel, Inc., a member of the International Ladies' Garment Workers' Union ("ILGWU"), and a participant in that union's health and welfare program. Defendants Northeast Department ILGWU Health and Welfare Fund and ILGWU Eastern States Health and Welfare Fund were providers of benefit programs for members of the ILGWU. In January 1990, these two funds merged into a single entity, the ILGWU Eastern States Health and Welfare Fund ("the Fund"), which is the surviving union health and welfare plan, with offices in New York City.

On October 18, 1990, Plaintiff was seriously injured in a motor vehicle accident. According to Plaintiff, her accident-related medical expenses exceeded $65,000. She exhausted the available medical benefits coverage on her Prudential motor vehicle insurance and subsequently filed both a claim against the tortfeasor responsible for the accident, and an underinsurance claim with Prudential. She apparently exhausted the Prudential coverage. She reached a settlement with the tortfeasor on June 17, 1992.[1]

Subsequent to the accident, Plaintiff made various claims under the ILGWU Fund plan for medical benefits which remain unpaid. She brought the captioned action to recover the benefits, as well as to clarify her rights to future benefits. According to her complaint, she seeks bad faith damages as well as the benefits, attorney's fees, costs, and interest. The complaint asserts federal jurisdiction on diversity grounds and presents no explicit legal doctrine to justify the claims.

Defendants have counterclaimed for reimbursement of $2,924.78 in advance payments made to Plaintiff for medical expenses allegedly excluded from Fund coverage, but advanced until Plaintiff recovered from the relevant third party(s) or tortfeasor(s). Plaintiff argues that since the medical expenses were improperly excluded from coverage, the subject payments were not "advances" and need not be reimbursed.

### Legal Discussion

#### I. Motions for Summary Judgment.

The court will consider these cross-motions under the accepted standards for the award of summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate where there are no remaining issues of material fact to be decided, and one party is entitled to judgment as a matter of law. *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987). In examining Rule 56 motions, the court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

The parties' burdens in summary judgment may be described in the following way: Once the moving party has shown an absence of evidence to support the claims of the non-moving party, the non-moving party must do more than simply sit back and rest on the allegations in her complaint. She must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to inter-

---

1. *See* Settlement Agreement and Release, Defendants' exhibits to Obrenz Aff., no. 16. The parties settled for $125,000 plus four guaranteed scheduled payments ranging from $10,000 to $30,000, plus $1,030 per month for life. *Id.*

rogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the non-movant bears the burden of persuasion at trial, the moving party may meet its burden by showing that the evidentiary materials of record, if reduced to admissible form, would be insufficient to carry the non-movant's burden at trial. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

## II. Is the Fund a Self–Insured ERISA Plan?

■ From the outset of this action, Defendants have asserted that the Fund is a multi-employer health and welfare plan within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendants' legal arguments in the captioned action depend on the Fund being an ERISA plan. However, Plaintiff has never, in either responsive or reply briefs, addressed the Fund's status under ERISA, or submitted any evidence to controvert Defendants' position on this point. In fact, Plaintiff's arguments seem to implicitly accept the fact that the ILGWU Fund is an ERISA plan. (*See, e.g.,* Plaintiff's brief in support at 6–8.)

Defendants have submitted the affidavit of the Fund director, which states that the Fund has always been a multi-employer plan within the meaning of ERISA. (*See* Aff. of Bert N. Obrentz ("Obrentz Aff.") at ¶ 3, p. 2.) It provides medical, disability, and preventative health care, as well as vacation benefits to employees of contributing union employers. (*Id.*) As per collective bargaining agreements, plan benefits are funded by employer contributions and the income earned on them. (*Id.*) The Fund has a published Plan, Rules, and a Summary Plan description available to individuals upon request and routinely supplied to union affiliates. Defendants have supplied copies of these docu-

ments as exhibits.[2] The Fund has ongoing agreements with Blue Cross and Blue Shield to administer its hospital, medical, and major medical benefits; the Fund itself remains solely responsible for the payment of such benefits. These agreements have also been included as exhibits by Defendants.[3]

After viewing the above documents, and given the lack of any controverting evidence from Plaintiff, this court concurs with Defendants that the subject Fund is a multi-employer employee welfare benefit plan covered by ERISA. *See* 29 U.S.C. § 1002(1), (4), (37)(A) (definitions of employee welfare plan, employee organization, multi-employer plan); 29 U.S.C. § 1003 (coverage of ERISA); 29 U.S.C. § 1102(a), (b) (establishment and requisite features of employee benefit plan). The court further agrees that the Fund is a self-insured ERISA plan.

## III. What is Plaintiff's Cause of Action and What Is the Standard of Review?

■ As the court stated earlier, the captioned Complaint cites facts and the desired outcome but no explicit legal doctrine. It makes no mention of ERISA. Because the Complaint requests "bad faith" damages, a state law concept, the court infers that Plaintiff's action was intended as one under state law, perhaps for breach of contract.

Since the court has decided that the Fund is an ERISA plan, ERISA itself circumscribes the causes of action available to plan participants. ERISA is a comprehensive piece of legislation which contains three provisions pertaining to its preemptive effect on state law. ERISA § 514(a), the so-called "preemption clause," provides,

> Except as provided in subsection (b) [ERISA savings clause] of this section, the provisions of this subchapter and subchapter II of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . .

---

**2.** *See* Defendants' exhibits to Obrentz Aff., nos. 3–5 (Plan, rules, and summary plan description of the Fund).

**3.** *See* Defendants' exhibits to Obrentz Aff., nos. 6–10 (agreements with Blue Cross, Blue Shield).

29 U.S.C. § 1144(a).[4] ERISA § 514(b)(2)(A), the "savings clause," provides,

> Except as provided in subparagraph (B) [ERISA deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking or securities.

29 U.S.C. § 1144(b)(2)(A). ERISA § 514(b)(2)(B), the "deemer clause," provides,

> Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B). Whatever else these three provisions encompass, it is clear that they result in the preemption of state common law causes of action to recover medical benefits, such as breach of contract. Such causes of action relate to employee benefit plans, and are thus within the scope of the "preemption clause," but are not specifically directed at the regulation of insurance, banking or securities and thus not saved under the "savings clause." *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). As the United States Supreme Court has detailed, Congress intended that the deliberately extensive civil enforcement scheme contained in ERISA § 502(a), 29 U.S.C. § 1132(a), be the exclusive vehicle for actions by plan participants and beneficiaries asserting improper benefits processing. *Id.* at 52–54, 107 S.Ct. at 1555–57.

■ Under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), a plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The court will deem Plaintiff's action to be one under ERISA § 502(a)(1)(B).

In actions under § 1132(a)(1)(B), the United States Supreme Court has held that courts must review the denial of benefits under a *de novo* standard, unless the subject plan explicitly gives the plan administrator, or fiduciary, discretionary authority to determine eligibility for plan benefits or to construe the plan's terms. In those cases, courts must apply a more deferential standard of review, abuse of discretion. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).

The captioned parties have disagreed over whether the Fund's fiduciaries have the appropriate discretion to trigger the more deferential standard of review. However, since the court would uphold the challenged denial of medical benefits under either standard of review, it need not decide which standard is triggered.

## IV. The Terms of the Pennsylvania Statute and the Plan Provisions.

■ Plaintiff has relied on the following provision of the Pennsylvania Motor Vehicle Financial Responsibility Law:

> In any action for damages against a tortfeasor, or in any uninsured or under insured motorist proceeding, arising out of the maintenance or use of a motor vehicle, *a person who is eligible to receive benefits under the coverages set forth in this subchapter,* or worker's compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) *shall be precluded from recovering the amount of benefits paid or payable under this subchapter,* or worker's compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719.

75 Pa.Cons.Stat.Ann. § 1722 (1977 & 1992 Supp.) (emphasis added).

---

4. State criminal laws are generally exempt from this preemption provision. *See* 29 U.S.C. § 1144(b)(4).

On the other hand, Defendants rely on Coverage Exclusion 5 of the Fund's Summary Plan Description (*see* Defendants' exhibits to Obrenz Aff., no. 5 at p. 43) which also appears in the Fund's Basic Plan. (*See id.,* no. 3, p. 12–13.)[5] Exclusion 5 reads:

> You can not receive benefits/coverage for a condition if the costs of treating that condition are recoverable through legal action or claim settlement from another party or insurance company.

(Summary Plan Description, Defendants' exhibits to Obrenz Aff., no. 5, p. 43.)

The parties are embroiled in a "which came first, the chicken or the egg" dispute over which of the above provisions, the statute or the Exclusion, has primary effect. Plaintiff argues that the statutory provision, Section 1722, specifically precluded her from recovering medical expenses from the appropriate tortfeasor because they were payable under a medical benefit program. She contends that she is entitled to recovery of her accident medical expenses from the Fund since the statute precluded her from recovery of them from the appropriate third party(s).

However, Defendants contend that their Fund's Exclusion 5 is primary. According to them, Exclusion 5 made the accident medical coverage unavailable to Plaintiff, who was properly denied coverage under its clear and explicit terms. Therefore, even under the terms of the statute, Plaintiff could have pursued recovery of medical benefits from the appropriate third party. The Fund defends its decision and argues that Section 1722 cannot apply to a self-insured ERISA benefit plan so as to regulate or change the benefits offered by it. Section 1722 is "preempted" to the extent it can be read to do this.

The court concludes that Defendants have the more correct legal interpretation. Plaintiff's interpretation, that the statute has primary effect, would essentially permit Pennsylvania law (§ 1722) to regulate benefit coverage provisions of a self-insured ERISA benefit plan. Such an interpretation would put the Fund in the position of having to tailor its provided benefits to the locale of the beneficiary. Recent case law demonstrates that both of these results are unacceptable departures from the intentions of Congress in enacting ERISA.

In considering issues of preemption, the United States Supreme Court has found that the touchstone is Congressional intent. *See, e.g., FMC Corp. v. Holliday,* 498 U.S. 52, 56, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). In this instance, Congress provided three ERISA clauses which relate expressly to the preemption issue:[6]

> [The preemption clause] establishes as an area of exclusive federal concern the subject of every state law that "relate[s] to" an employee benefit plan governed by ERISA. The saving clause returns to the States the power to enforce those state laws that "regulat[e] insurance," except as provided in the deemer clause. Under the deemer clause, an employee benefit plan governed by ERISA shall not be "deemed" an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws "purporting to regulate" insurance companies or insurance contracts.

---

**5.** While Defendants' initial correspondence with Plaintiff's counsel indicated that Exclusion 5 was the reason for exclusion of Plaintiff's claims, (*see* letter of April 12, 1991, Defendants' exhibits to Obrenz Aff., no. 13), a later letter to Plaintiff's counsel cited both Exclusions 3 and 5. (*See id.,* no. 17.) Plaintiff characterizes Exclusion 3 as referring to the first $10,000 of medical coverage under motor vehicle insurance required by the Pennsylvania Motor Vehicle Financial Responsibility Law. Defendants' letter to Plaintiff's counsel supports this interpretation. (*See id.* (stating terms of Exclusion 3 and stating that therefore the Fund would not pay benefits payable under

Plaintiff's auto insurance coverage).) Plaintiff contends that Exclusion 3 is not relevant, because the benefits recovery sought by Plaintiff does not include the first $10,000 of medical expenses paid by her Prudential policy. Defendants do not seriously controvert this, and the major portion of both parties' pleadings are devoted to Exclusion 5. Hence, in its examination, the court will consider only Exclusion 5; the appropriate concern is whether there was *any* ground to withhold Fund coverage.

**6.** For the explicit wording of the preemption, saving, and deemer clauses, *see* p. 764–65, *supra.*

*Id.* After examining Congressional intent, the Supreme Court has found that ERISA's preemption clause has a broad reach. ERISA's legislative history indicates that Congress explicitly rejected a preemption provision that would have been limited to state laws dealing explicitly with ERISA plans. *See id.* at 59, n. 3, 111 S.Ct. at 408, n. 3. Instead, "Congress used the words 'relate to' . . . in their broad sense. It did not mean to pre-empt only state laws specifically designed to affect employee benefit plans." *Id.* at 59, 111 S.Ct. at 408. "A law 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983)). "[A] state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand Co.,* 498 U.S. at 139, 111 S.Ct. at 483. *See also FMC,* 498 U.S. at 58–60, 111 S.Ct. at 408. Preemption is not precluded "simply because a state law is consistent with ERISA's substantive requirements." *Id.*

Defendants have relied heavily on *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), in which the Supreme Court held that § 1720, a different provision of the same Pennsylvania Motor Vehicle Financial Responsibility Law involved in the instant action, was preempted by ERISA. Plaintiff's attempt to distinguish the facts in *FMC* from the facts in the captioned case [7] ignores the overarching general legal conclusions drawn from previous Supreme Court cases and asserted in *FMC.*

The Supreme Court held in *FMC* that § 1720 "related to" ERISA, within the meaning of the ERISA "preemption clause," because § 1720 "referred" to ERISA-governed plans, in its mention of "benefits . . . paid or payable under section 1719," in much the

way that § 1722, the subject provision in the captioned case, does.

In addition, the Supreme Court found that § 1720 also was "connected to" ERISA because, like § 1722 in the captioned action, § 1720 posed a risk that ERISA plan administrators would be subjected to conflicting regulations among different states, *FMC,* 498 U.S. at 58, 111 S.Ct. at 408; since requiring ERISA plan providers to design programs in the presence of differing State regulations would complicate the administration of nationwide plans, produce inefficiencies that employers might offset with decreased benefits, and possibly frustrate the calculation and award of uniform benefit levels nationwide, the *FMC* Court "applied the preemption clause to ensure that benefit plans will be governed by only a single set of regulations." *Id.,* at 58, 60, 111 S.Ct. at 408, 409. However, the *FMC* Court proceeded to find that § 1720 also fell within the ERISA insurance "saving clause," because § 1720 would invalidate any subrogation provisions insurance policies might contain, and thus control the terms of insurance contracts. *Id.* at 60, 111 S.Ct. at 409.

The *FMC* Court ultimately concluded that the ERISA "deemer clause" broadly exempted self-funded ERISA plans from the reach of § 1720. The Court found that Congress did not intend the "deemer clause" to apply merely to those instances where a state uses insurance regulation as a pretext to impinge on core ERISA concerns. *Id.* at 62, 410. Such an approach "would be fraught with administrative difficulties, necessitating definition of core ERISA concerns and of what constitutes business activity," undermining Congress' intent "to avoid endless litigation over the validity of State action." *Id.* at 60, 62, 111 S.Ct. at 409, 410. The Court stated that

by forbidding States to deem employee benefit plans "to be an insurance company or other insurer . . . or to be engaged in the business of insurance," the deemer clause relieves plans from state laws "pur-

---

7. *FMC* concerned the enforceability of an ERISA plan's subrogation clause in the face of a Pennsylvania statutory provision stating that "there shall be no right of subrogation or reimbursement from a claimant's tort recovery with re-

spect to . . . benefits available . . . or . . . paid or payable under section 1719." 75 Pa.Cons.Stat. Ann. § 1720. As stated above, the Supreme Court found that the Pennsylvania statutory provision was preempted by ERISA.

porting to regulate insurance." As a result, self-funded ERISA plans are exempt from state regulation insofar as that regulation "relates[s] to" the plans.... State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws. On the other hand, employee benefit plans that are insured are subject to indirect state insurance regulation ... [since] [a]n insurance company that insures a plan remains an insurer for purposes of state laws....

By recognizing a distinction between insurers of plans and the contracts of those insurers which are subject to direct state regulation, and self-insured employee benefit plans governed by ERISA, which are not, we observe Congress' presumed desire to reserve to the States the regulation of the "business of insurance."

*Id.*

This court agrees with Defendants' interpretation of the relative effect of Exclusion 5 and Section § 1722. Because Exclusion 5 precluded Plaintiff from collecting the medical benefits she sought, since they were recoverable from a third party, Plaintiff remained unconstrained under the Pennsylvania Motor Vehicle Financial Responsibility Law to seek those medical benefits from the appropriate tortfeasor(s). To the extent that one might read § 1722 otherwise, to preclude or trump a self-funded ERISA plan provision such as Exclusion 5, § 1722 is "preempted" by ERISA.

■ Section 1722 falls within the ERISA "preemption clause;" it "relates to" ERISA benefit plans, because it mentions benefit plans, and it is connected to ERISA because, like § 1720, it risks subjecting plans such as the Fund to conflicting legal requirements from different states. While § 1722 might be interpreted as a law regulating insurance under the ERISA insurance "savings clause," the ERISA "deemer clause" dictates that

§ 1722 is preempted to the extent that it would regulate the benefits offered by a self-funded ERISA benefit plan.[8] ERISA preempts any state law that regulates the terms of a self-insured ERISA benefit plan; furthermore, to argue alternatively that such a state law may be applied to *interpret* a plan's substantive terms would be to allow a state to do through the back door, what it may not do via the front. *See Thompson v. Talquin Bldg. Prods. Co.,* 928 F.2d 649, 653 (4th Cir.1991).

Given the above, the court agrees that, with regard to Plaintiff's claim for medical benefits under the terms of the Fund plan, there are no remaining issues of material fact and judgment must be for Defendants as a matter of law.

## V. Defendants' Counterclaim.

### A. The Parties' Positions.

According to the above, Defendants had no legal obligation to pay medical benefits to Plaintiff for injuries related to the October, 1990 motor vehicle accident. However, Defendants allege that they did advance $2924.78 in medical benefits relating to Plaintiff's accident. Their counterclaim seeks reimbursement for this amount, under 29 U.S.C. § 1132(a)(3)(B). They also seem to argue for judgment under a federal common law theory of unjust enrichment.

As the court stated above, Plaintiff's major argument directed to the counterclaim is that the monies paid were not "advances" but medical benefits payable under the terms of the Fund's plan. Since the issue of reimbursement only arises in the plan documents with regard to advances, Plaintiff contends that reimbursement is not appropriate. Obviously the court's decision on Plaintiff's claim makes this position untenable. Plaintiff also argues, less vociferously, that the Fund plan documents limit the obligation of participants to reimburse the plan to instances where participants gain a settlement or recovery specifically earmarked for medical expenses. She characterizes her settlement

---

8. *See Hampton Indus., Inc. v. Sparrow,* 981 F.2d 726, 730 (4th Cir.1992) (so long as ERISA plan can be labeled self-funded, state cannot regulate it); *Thompson v. Talquin Bldg. Prods. Co.,* 928 F.2d 649, 652 (4th Cir.1991) (same).

with the third party tortfeasors as one for pain and suffering.

## B. Discussion.

■ While 29 U.S.C. § 1132(a)(3)(B) does indeed provide for suits to enforce provisions or redress violations of an ERISA plan, its terms explicitly require that such suits be brought by a plan fiduciary. The section does not provide a direct cause of action for the plan itself. Hence, the captioned counterclaim is not proper under § 1132(a)(3)(B).

■ However, the court believes that the approach taken in *Provident Life & Accident Insurance Co. v. Waller*, 906 F.2d 985 (4th Cir.), *cert. denied*, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990), is appropriate here. *Provident* concerned the refusal of a plan participant to reimburse an ERISA fund; in that case a plan provision stated,

> Medical disability benefits are not payable to or for a person covered under the Group Plan when the injury ... occurs through the act or omission of another person. However, payment for medical care expenses ... for an injury ... in which a third party is liable *may be advanced by Provident.* For this to happen, the *covered person must sign an agreement to repay the Group Plan in full any payments advanced* ... from the judgment or settlement he or she receives.

*Id.* at 986 (emphasis in original). In *Provident*, the ERISA plan advanced about $6,000 worth of medical benefits to a participant despite her failure to sign a repayment agreement. The participant proceeded to collect damages from a third party, and refused to reimburse her plan. *Id.* at 986–87. The Fourth Circuit concluded that it lacked jurisdiction under 29 U.S.C. § 1132(a) (the ERISA civil remedies section) because actions available under that provision were limited to the parties cited by its terms. *Id.* at 987–88.

However, the Fourth Circuit went on to explain that federal courts do have original jurisdiction, under 28 U.S.C. § 1331(a), of civil actions arising under federal common law. The court found that since ERISA's broad preemption clause dictated that state contract and tort claims be preempted in favor of the application of ERISA, equitable claims relating to an ERISA plan likewise should be examined under federal ERISA law. Since ERISA itself provided no explicit remedy for the *Provident* plaintiff, the Fourth Circuit found it appropriate to focus on a federal *common law* remedy of unjust enrichment. Such an approach was consistent with the United States Supreme Court's authorization for federal courts "to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989) (citations omitted). The Fourth Circuit applied the federal common law of unjust enrichment and held that the *Provident* participant must repay her ERISA plan. *Id.* at 993–94. The Fourth Circuit's approach of applying federal common law where ERISA provides the plaintiff no explicit remedy has been followed and/or cited by a number of other courts, including the Third Circuit. *See, e.g., Luby v. Teamsters Health, Welfare & Pension Trust Funds*, 944 F.2d 1176, 1187 (3d Cir.1991) (federal common law of equitable restitution available as remedy for ERISA plan to recover mistaken payments out of trust corpus; cites *Provident* with approval); *Asbestos Workers Local No. 23 Health and Welfare Plan v. Mackowiak*, Civil Action No. 3:CV–91–416, slip op. at 5–6 (M.D.Pa. December 4, 1991), *aff'd without opinion*, 983 F.2d 1049 (3d Cir.1992) (holding federal common law dictated that participant repay ERISA plan as per reimbursement provision in plan). This court will apply the *Provident* approach in the captioned case by deeming Defendants' counterclaim to be one under the federal common law of unjust enrichment and falling within federal question jurisdiction. *See* 28 U.S.C. § 1331(a).

"As summarized by a national commentator, three elements encompass the equitable remedy of unjust enrichment ... the plaintiff must show that (1) he had a reasonable expectation of payment, (2) the defendant should reasonably have expected to pay, or (3) society's reasonable expectations of person and property would be defeated by nonpayment." *Provident*, 906 F.2d at 993–94

(citing C. Kaufman, *Corbin on Contracts,* § 19A at 50 (Supp.1989)).

■ In the captioned case, application of the law of unjust enrichment would further the intent demonstrated in the Fund plan. Two relevant Fund document provisions state the obligation of Fund participants to reimburse advances made by the Fund for otherwise excluded medical claims.[9] This obligation is variously stated as one of assignment of claim, and as one of direct repayment from third party recoveries. It is clear from these two provisions that the Fund did have a reasonable expectation of reimbursement if it advanced benefits that were otherwise precluded by the plan, and that Plaintiff reasonably should have expected to repay any such advancements made by the Fund, from any recovery she gained from a third party.

Plaintiff is incorrect in contending that the Fund documents demonstrate an expectation of reimbursement only if participants have a recovery specifically earmarked for medical expenses. The two relevant Fund provisions clearly and unambiguously provide for assignment of a participant's "right to recover loss," and repayment "from any settlement received." Hence, reimbursement for advances under the terms of the Plan must be made if there is *any* recovery at all from a third party, insurer, etc. *See Dugan v. Nick-*

*la,* 763 F.Supp. 981, 984 (N.D.Ill.1991) (subrogation provision requiring reimbursement "upon any recovery made by an Employee" would be operative no matter how jury apportioned verdict).

Neither party raises as an issue the fact that Plaintiff never signed an Assignment of Claim form, although the Fund explicitly requested that she do so. In *Provident,* the Fourth Circuit found that the fact that benefits were advanced prior to obtaining the participant's signature on a reimbursement form was not material to the result. As the Third Circuit has stated in another context, "under the common law of unjust enrichment, restitution of a mistaken payment is permitted even if payment was caused by the negligence of the party seeking restitution." *Luby,* 944 F.2d at 1186. Here Plaintiff's failure to sign an Assignment form, and any possible negligence of Defendants in advancing funds before obtaining such form, should not bar reimbursement of the funds advanced,[10] if the reasonable expectations of the parties should have been that reimbursement would occur.

In addition to the parties' expectations, society's reasonable expectations dictate that reimbursement be made to Defendants out of Plaintiff's recovery. Plaintiff has recovered a sizeable settlement.[11] Her failure to reimburse the Fund would allow her to recoup a double recovery for those medical expenses

---

**9.** The Fund Plan states:

> In such circumstances [where coverage is denied because injuries are from accidents where recovery may be had from a third party, etc.], the Fund may determine, in appropriate cases, that because of delays inherent in litigation or the processing of such claims, it will pay the benefits to or on behalf of the worker or dependent conditioned, however, upon receipt of an assignment to the Fund of such worker's or dependent's right to recover for loss, to the full extent payments have been made by this fund.

(Fund Plan document, Defendants' exhibit 3 to Obrenz Aff., at p. 14.) The Fund's Summary Plan Description, states:

> If you have a right to recover payment for an injury or illness from another source, there may be delays because of the time it takes to process the claim or because of lawsuits. If this happens, the Fund may be able to help you temporarily by paying benefits in advance. If this is done, you must sign a legal document stating that the Fund will be repaid in full, from any settlement you receive. The Fund

> must be repaid to the Full Extent ... of the benefits it provided.

(Summary Plan Description, Defendants' exhibit 5 to Obrenz Aff., at p. 44 (emphasis in original).)

**10.** The Fund documents do not specify that the participant must sign a form *before* any Fund advancements occur. The two cited provisions imply just the opposite, that the advancements are made with the understanding that the form will be signed.

**11.** While Plaintiff has characterized her settlement as one for pain and suffering, the settlement agreement itself provides that it serves as a discharge for "all claims which have, or might be made." Such claims include "without limitation, any and all known or unknown claims for bodily and personal injuries to Claimant." (Settlement agreement and release, Defendants' exhibits to Obrenz Aff., no. 16.) This settlement language belies Plaintiff's characterization of the settlement. For the terms of the settlement, *see* note 1, *supra:*

paid by the Fund, while the Fund trust would thereby be depleted. As the *Provident* court concluded, the provisions of ERISA[12] indicate Congress' desire "to ensure that plan funds are administered equitably, and that no one party, not even plan beneficiaries, should unjustly profit." *Provident*, 906 F.2d at 993 (citing *Carl Colteryahn Dairy, Inc. v. Western Pa. Teamsters & Employers Pension Fund*, 847 F.2d 113, 122 (3d Cir.1988)).

Given the above, Defendants' motion for summary judgment on their counterclaim will be granted. Plaintiff must reimburse all accident-associated medical benefits advanced by the Fund on her behalf. In order to prevent unjust enrichment from interest, equity demands that Plaintiff shall also pay prejudgment interest on those advancements, payable from June 17, 1992, the date of her settlement.

While Plaintiff has never challenged Defendants' list of paid claims, the court would prefer to have some record documentation. In their motion, Defendants listed the paid claims, by date of *payment*, amount and provider, but the bills that were actually submitted as exhibits by Defendants are for an unorganized mixture of paid and unpaid claims, and can be categorized only by billing date. Prior to the entry of judgment, if possible, Defendants shall submit to the court a set of discrete bills to match the list they provided in their motion for summary judgment.

█ Defendants have requested attorney fees and costs under 29 U.S.C. § 1132(g)(1); this provision allows a court, in its discretion, to award attorney's fees and costs to either party in an action, such as Plaintiff's, brought under ERISA by a participant, beneficiary or fiduciary.

The most prevalent approach used by courts in awarding costs and fees under § 1132(g)(1) is to consider five factors: (1) the offending party's bad faith or culpability, (2) the ability of the offending party to pay the fee award, (3) the deterrent effect of an attorney's fee award against others acting under similar circumstances, (4) whether or not the party requesting attorney's fees seeks to benefit all participants or members of the ERISA plan, and (5) the relative merits of the parties' positions.

*Home for Crippled Children v. Prudential Ins. Co.*, 590 F.Supp. 1490, 1508 (W.D.Pa. 1984). *See also Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir.1983).

The court does not believe that these factors weigh in favor of awarding attorney fees and costs to Defendants. There has been no demonstration of any bad faith on the part of Plaintiff. Her position regarding coverage of her claims by the Defendants was truly intertwined with her position on reimbursement to Defendants of their advances.

With regard to her own claim, while Plaintiff's position was not adopted by the court, it was certainly not a frivolous one; to the extent that her action resolved an unclear issue regarding the preemptive effect of Pennsylvania law on the terms of the Fund's plan, the action has benefitted both the Fund itself and other plan participants. The court is not certain that the deterrence of actions such as the captioned one is a wise judicial goal.

An appropriate order will issue.

## ORDER

In accordance with the accompanying memorandum, IT IS **HEREBY ORDERED THAT:**

1. Plaintiff's action is deemed one to recover benefits due under the terms of an ERISA plan, as per 29 U.S.C. § 1132(a)(1)(B).

2. Plaintiff's motion for summary judgment is **DENIED.**

3. Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's claim for benefits under the terms of the Defendants' plan. Judgment will be entered for the Defendants and against the Plaintiff on Plaintiff's claim.

**12.** The court explicitly cited 29 U.S.C. § 1103(c)(2)(A).

4. Defendants' counterclaim for reimbursement of advanced funds is deemed one under 28 U.S.C. § 1331.

5. Defendants' motion for summary judgment is GRANTED as to Defendants' counterclaim. Judgment, including prejudgment interest, will be entered for the Defendants and against the Plaintiff on Defendants' counterclaim. Prejudgment interest will be calculated according to 28 U.S.C. § 1961(a). However, the taxing of costs and attorney fees is DENIED.

6. The clerk of court will defer the entry of judgment on the counterclaim until Defendants submit additional information in the form of bills or other documentary support for the monies claimed, as per the court's memorandum of law.

7. Defendants shall submit the latter information to the court by April 21, 1993.