Richard W. MARTZ, as Trustee of the
Building Trades Health and
Welfare Fund, Plaintiff,

v.

Gerald F. KURTZ and Jama Lynn Kurtz.

Civ. No. 1:CV–94–1614.

United States District Court,
M.D. Pennsylvania.

Aug. 1, 1995.

Ira H. Weinstock, Harrisburg, PA, Michael A. Koranda, Ira H. Weinstock, P.C., Harrisburg, PA, for plaintiff.

James. A. Nettleton, Jr., Lancaster, PA, Thomas P. Lang, Law office of Dale E. Anstine, York, PA, for defendants.

## *MEMORANDUM*

RAMBO, Chief Judge.

Plaintiff, Richard W. Martz, in his capacity as Trustee of the Building Trades Health and Welfare Fund, filed this action pursuant to § 502(a)(3)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1132(a)(3)(B). Presently before the court are the parties' cross motions for summary judgment.

In its motion, Plaintiff contends that, as a matter of law, the Fund is entitled to full reimbursement of all monies advanced to Gerald Kurtz on behalf of his daughter, Jama Lynn. On crossmotion, Defendants make two arguments in support of an award of summary judgment in their favor. First, Defendants argue that Jama Lynn is not bound to reimburse the Fund because she neither filed an Application for Benefits with the Fund, nor signed an "Assignment of Claim" agreement. Additionally, Defendants contend that Jama Lynn is not bound by either the terms of the summary plan description of the Fund ("the summary plan") or the "Assignment of Claim" agreement ("the agreement") signed by Gerald Kurtz. Defendant Gerald F. Kurtz admits that he is bound by the documents, but claims he is not responsible for reimbursing the Fund because he never received any of the monies recovered by Jama Lynn through her settlement of third party litigation and underinsured motorist claims.

Arguing in the alternative, Defendants next contend that should the Court find that the Fund is entitled to reimbursement, the amount due should be reduced by a pro rata share of attorney's fees and costs relating to the third party and underinsured motorist

settlements obtained by Jama Lynn. Defendants argue that it is undisputed that they can owe no more than the $15,254.26, plus interest, presently deposited with the Court.

## I. Background

The following facts are undisputed unless otherwise noted. The Building Trades Health and Welfare Fund (the "Fund") is an "employee welfare benefit plan" as defined by Section 3(1) of ERISA, 29 U.S.C. § 1002(1). Defendant, Gerald F. Kurtz, is a "participant" of the Fund, as defined by Section 3(7) of ERISA, 29 U.S.C. § 1002(7). Defendant, Jama Lynn Kurtz, daughter of Gerald F. Kurtz, is and/or was a "beneficiary" of the Fund, as defined by Section 3(8) of ERISA, 29 U.S.C. § 1002(8). The contractual rights and duties of the parties are set forth in the summary plan.

During the summer of 1991, 17 year old Jama Lynn Kurtz suffered personal injuries when she was involved in a motor vehicle accident caused by the negligence of a third party. As a result of the accident, Defendant Jama Lynn Kurtz incurred medical expenses of at least $34,750.00. Thereafter, Defendant Gerald F. Kurtz made a claim for benefits with the Fund seeking payment of certain accident-related medical bills incurred by his daughter. At the Fund's request, Defendant Gerald F. Kurtz executed an "Assignment of Claim" agreement, ("the agreement").[1] The Fund paid medical bills in the amount of $21,084.97 on behalf of Jama Lynn. All payments were made before Jama Lynn reached the legal age of majority. Defendant Jama Lynn Kurtz has never personally filed an application for benefits with the Fund, nor signed an "Assignment of Claim" agreement.

In the beginning of 1994, counsel for Defendant informed the Fund that Jama Lynn Kurtz recovered $33,333.30 through a third party settlement and an additional $24,166.70 through an underinsured motorist arbitra-

tion. At the time of recovery, Jama Lynn was eighteen years old and thus, an adult under Pennsylvania law. Under the summary plan description, however, her status as a dependent continued.[2] In the spring of 1994, the Fund requested that Defendants reimburse the Fund for all medical expenses paid and/or advanced at their request, to wit $21,084.97. Defendants contend that they owe the Fund nothing.

Defendants allege that because Jama Lynn was a minor at the time the Fund paid medical bills on her behalf, the Fund is not entitled to reimbursement from her as a matter of law. Defendants maintain that under Pennsylvania law Mr. Kurtz was obligated to pay for the medical expenses of Jama Lynn while she was a minor, whether or not he obtained insurance. Accordingly, only Mr. Kurtz is potentially liable to the Fund. Further, because Jama Lynn did not obtain any third party recovery until after she turned eighteen, none of the recovered money was ever under Mr. Kurtz's control. Thus, Defendants contend, neither Jama Lynn nor Mr. Kurtz is bound to reimburse the Fund.

Finally, Defendants argue in the alternative that should the court find for Plaintiff, Defendants are only liable for the amount advanced less certain attorney's fees and costs. The court will address these issues *seriatim*.

## II. Legal Standards For Summary Judgment

The court will consider these cross-motions under the accepted standard for the award of summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate where there are no remaining issues of material fact to be decided, and one party is entitled to judgment as a matter of law. *Hankins v. Temple University*, 829 F.2d 437, 440 (3d

---

1. The "Assignment of Claim" agreement states, "[f]or and in consideration of this advance of benefits on the undersigned's behalf, the undersigned does hereby assign to the Fund his or her right and/or those of his or her heirs, legal representatives, executors, administrators or assigns to recover for the loss to the full extent, without deduction of attorney's fees, court costs or arbi-

tration expenses, that the Fund has provided benefits." (Pl.Ex.B.)

2. "Dependent" is defined as a covered employee's unmarried children from birth to age 19, at least half of the cost of whose support is provided by a covered employee. (Summary plan at 9.)

Cir.1987). In examining Rule 56 motions, the court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

The parties' burdens at summary judgment may be described in the following way: once the moving party has shown an absence of evidence to support the claims of the non-moving party, the non-moving party must do more than simply sit back and rest on the allegations of her complaint. She must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on the file,' designate 'specific facts showing that there is a genuine issue for trial' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the non-movant bears the burden of persuasion at trial, the moving party may meet its burden by showing that the evidentiary materials of record, if reduced to admissible form, would be insufficient to carry the non-movant's burden at trial. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

### III. *Discussion*

Plaintiff has pleaded three claims in the complaint, each of which purport to arise from 29 U.S.C. § 1132(a)(3)(B). Count I is styled as an "Enforcement of Assignment of Claims Agreement and Summary Plan Description" claim; Count II as a federal common law breach of contract claim; and Count III as a federal common law unjust enrichment claim. Because no motions to dismiss were filed in the captioned action, this court has not yet had the opportunity to evaluate the propriety of the pleadings. Accordingly, before reaching the merits of each claim and determining whether material factual disputes exist, the court will first ascertain whether each count is properly pleaded pursuant to ERISA, 29 U.S.C. § 1132(a)(3)(B).

### A. *Claims Properly Brought Pursuant to 29 U.S.C. § 1132(a)(3)*

Section 1132(a)(3) provides as follows:

(a) **Persons empowered to bring a civil action.** A civil action may be brought—

. . . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

29 U.S.C. § 1132(a). Here, the parties do not dispute that Plaintiff, a fiduciary of the ERISA fund, brings the captioned action to obtain reimbursement of monies advanced to Defendants for Jama Lynn Kurtz's medical expenses. Upon reading the complaint, however, the court is uncertain whether Plaintiff is seeking legal or equitable relief. Each count of the complaint prays for both specific performance and compensatory damages. Specific performance is an equitable remedy while compensatory damages are a legal remedy. With respect to § 1132(a)(3), this court is empowered to grant only equitable remedies. Thus, insofar as Plaintiff is alleging legal claims, the claims are improperly before this court.[3]

---

3. To hear legal claims, this court would be required to create new federal common law actions pursuant to ERISA. To do so would violate the intent of Congress and the most basic tenants of the ERISA statute. Discussing the subtle but critical distinction between creating common law causes of action and using common law to fill the interstices of ERISA, the United States Court of Appeals for the Ninth Circuit recently noted as follows:

the Supreme Court's approval of the development of a federal common law under ERISA does not authorize the creation of federal common law causes of action. The federal common law that the Court envisioned relates to rights and obligations under the ERISA plan and not to causes of action.... *Claims relating to ERISA plans must therefore invoke the specific remedies of ERISA.*

*Pacificare Inc. v. Martin*, 34 F.3d 834, 836 (9th Cir.1994) (citations omitted) (emphasis added). The only remedy expressly noted in § 1132(a)(3) is an equitable remedy.

The "approach of applying federal common law where ERISA provides the plaintiff no explicit remedy has been followed and/or cited by a number of other courts, including the Third Circuit." *Travitz v. Northeast Dept. ILGWU H. & W. Fund,* 818 F.Supp. 761, 769 (M.D.Pa.1993) (citing cases), *aff'd,* 13 F.3d 704 (3d Cir.), *and cert. denied,* — U.S. —, 114 S.Ct. 2165, 128 L.Ed.2d 888 (1994). Section 1132 creates an equitable remedy for certain persons aggrieved by a violation of the terms of the ERISA fund's plan; however, the statute does not specifically define the remedy. Federal courts have characterized such a remedy as arising under the federal common law of unjust enrichment. *See Provident Life & Accident Ins. Co. v. Waller,* 906 F.2d 985 (4th Cir.), *cert. denied,* 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990) (applying federal common law of unjust enrichment); *Travitz,* 818 F.Supp. at 769–771 (same). More recently, the United States Court of Appeals for the Ninth Circuit stated in *dicta* that "to state a claim under section 1132(a)(3), ... [the plaintiff] must be suing for equitable relief to enforce the terms of the plan. The district court properly dismissed ... [the plaintiff's] case because it was a claim for breach of contract rather than for equitable relief." *Pacificare Inc. v. Martin,* 34 F.3d 834, 838 (9th Cir.1994).

■ Based upon the foregoing, it is questionable whether Count II of the complaint, Plaintiff's federal common law breach of contract claim, is viable. The court, however, finds that regardless of whether Count II is viable, Plaintiff has stated cognizable claims under Counts I and III.[4] Further, the court finds that although it "need not decide which of the two theories is applicable in the present case ... for they are interrelated and ... [Plaintiff] would prevail under either," *Harris Trust and Savings Bank v. Provident Life and Accident Ins. Co.,* 57 F.3d 608, 614 (7th Cir.1995), the court will proceed under Count III.[5]

**B. *Federal Common Law of Unjust Enrichment***

■ In Count III of the complaint, Plaintiff alleges that Defendants have received a windfall at the expense of Plaintiff. Specifically, Plaintiff contends that Defendants have obtained a double recovery with respect to Defendant Jama Lynn Kurtz's medical expenses. Defendants, in contrast, argue that the Fund is not entitled to reimbursement based upon several theories rooted in state contract law. Defendants argue that: 1) the summary plan, and thus, the subrogation clause, is inapplicable because the Fund advanced the monies in a situation outside the scope of the summary plan; 2) the agreement signed by Mr. Kurtz did not explicitly bind Jama Lynn Kurtz to reimburse the Fund; and 3) Mr. Kurtz signed the agreement in his own capacity, and not on behalf of Jama Lynn.

■ Insofar as Defendants' arguments are premised upon state contract law, the court finds the arguments to be without merit. *See Provident,* 906 F.2d at 993–94.[6] A significant feature of the ERISA statute is its occupation of the field of employee pension, welfare, and benefit fund law. *See* 29 U.S.C. § 1144(a) (pre-emption clause); 29 U.S.C. § 1144(b)(2)(A) (savings clause); 29 U.S.C. 1144(b)(2)(B) (deemer clause). In *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), the United States

---

**4.** The court finds Plaintiff's use of the phrase "compensatory damages" in its prayer for relief to be a semantical error. It is clear from Plaintiff's motion and supporting brief that Plaintiff seeks restitution *not* compensatory damages. As such, the court interprets Count I as pleading a claim for enforcement and specific performance, and Count III as pleading a claim for unjust enrichment and restitution.

**5.** The same end would be accomplished by proceeding under either Count I or Count III. If the court had elected to proceed under Count I, the court would have ordered specific performance

of the agreement between the parties. Such performance would have required Defendants to reimburse the fund.

**6.** The Fourth Circuit decided *Provident* under the federal common law of unjust enrichment after finding that ERISA's broad preemption clause dictated that state contract and tort claims be preempted. *Id.* at 993–94; *see Travitz v. Northeast Dept. ILGWU H. & W. Fund,* 818 F.Supp. 761, 769 (M.D.Pa.1993) (noting that the *Provident* court found that state contract and tort law was preempted by ERISA).

Supreme Court, discussing ERISA's occupation of the relevant field, stated:

> [t]he pre-emption clause in conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA. The saving clause returns to the States the power to enforce those state laws that "regulat[e] insurance," except as provided in the deemer clause. Under the deemer clause, an employee benefit plan governed by ERISA shall not be "deemed" an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws "purporting to regulate" insurance companies or insurance contracts.

*FMC Corp.*, 498 U.S. at 58, 111 S.Ct. at 407. Thus, the summary plan and the agreement must be interpreted in accordance with federal common law rather than state contract law. As the Fourth Circuit noted in *Provident:*

> Despite the power of the federal courts to fill in the interstices of ERISA, we must respect the fact that Congress in creating ERISA has 'established an extensive regulatory network and has expressly announced its intention to occupy the field.' ... Accordingly, we must proceed cautiously in creating additional rights under the rubric of federal common law, and remember that we do not possess *carte blanche* authority to 'use state common law to re-write a federal statute.'"

*Provident,* 906 F.2d at 992 (citations omitted) (emphasis in original).

The United States Court of Appeals for the Seventh Circuit recently handed down a decision in a case analogous to the case *sub judice.* In *Harris Trust and Savings Bank v. Provident Life & Accident Ins. Co.,* 57 F.3d 608 (7th Cir. June 19, 1995), the Seventh Circuit found that an employer was entitled to reimbursement of monies advanced to an employee/participant under a theory of unjust enrichment.[7] *Id.* at 615. The employer had advanced monies to the employee/participant to cover medical expenses incurred by the employee/participant's daughter, a beneficiary of the ERISA plan. The employee/participant's daughter was critically injured when the car in which she was a passenger was struck by a train. The monies were advanced despite the fact that the plan contained a "third party exclusion" whereby it was expressly stated that monies would not be advanced to cover medical expenses for injuries caused by a third party. Moreover, the fund administrator failed to obtain the employee/participant's signature on an assignment of claim form, which would grant the fund a right of subrogation to any recovery from third party litigation, prior to advancing the monies. The employee/participant filed a third-party suit on behalf of his daughter. The suit settled in favor of the employee/participant.

Ruling in favor of the fund's right of subrogation, the Seventh Circuit held as follows:

> [t]o the extent plaintiffs contend that Campbell waived any right it may have had to restitution by failing to procure a written agreement to repay, their argument is ... without merit.
>
> As the District court correctly noted:
>
> The third-party provision is a coverage limitation; it does not purport to place duties upon Provident or Campbell ... The plan administrators simply may "elect" to advance payments in appropriate situations. Campbell did not have a contractual duty to procure a signed reimbursement agreement before paying advances. Thus the failure to procure Martin Den Hartog's signature on the reimbursement forms was not a waiver of Campbell's legal rights under the agreement.

*Id.* at 615. The Seventh Circuit's reasoning is applicable to the case presently before this court.

▮▮▮ The only discernable difference between *Harris Trust* and the captioned action is that in the instant case, Jama Lynn Kurtz filed the third-party litigation in her own name rather than having her father file

---

**7.** In *Harris Trust,* the employer, Campbell's Soup Company, fully funded its own ERISA plan. The plan was administered by Provident.

the litigation on her behalf. The court finds this distinction to be insignificant. The Fund "did not have a contractual duty to procure a signed reimbursement agreement before paying advances." *Harris Trust*, at 615. If it had no duty to obtain the signature from Mr. Kurtz, it likewise had no duty to obtain such a signature from Jama Lynn. Thus, by failing to obtain a signed assignment of claims agreement from Jama Lynn, the Fund did not waive its legal rights under the summary plan. The subrogation clause of the summary plan grants a right of subrogation to the Fund for any "recovery against any person or organization" that a beneficiary of the Fund's money might obtain.[8] (Summary plan at 8.) The Fund has a subrogation interest in the monies obtained by Jama Lynn through the third party litigation. Moreover, Jama Lynn has been unjustly enriched by recouping a double recovery with respect to her medical expenses.

■ "[T]hree elements encompass the equitable remedy of unjust enrichment and quasi-contract: the plaintiff must show that (1) he had a reasonable expectation of payment, (2) the defendant should reasonably have expected to pay, or (3) society's reasonable expectations of person and property would be defeated by nonpayment." *Provident Life & Accident Insurance Co. v. Waller*, 906 F.2d 985, 993–94 (4th Cir.) (quoting C. Kaufman, Corbin on Contracts § 19A, at 50 (Supp.1989)), *cert. denied*, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990); *Travitz v. Northeast Department ILGWU Health & Welfare Fund*, 818 F.Supp. 761, 769 (M.D.Pa.1993).

As in *Provident*, "the facts of the instant case fit the archetypal unjust enrichment scenario." *Provident*, 906 F.2d at 993. Specifically, the Fund reasonably expected to be reimbursed, Defendants should have reasonably expected to reimburse the Fund, and public policy concerns militate in favor of reimbursement. Defendant Jama Lynn Kurtz has recovered sizeable amounts of money in settlement of her third party claims. Were the court to find that the Fund is not entitled to reimbursement, Jama Lynn would recoup monies for medical expenses she did not pay in the first instance. Moreover, the Fund, whose corpus was diminished by its payment of Jama Lynn's medical expenses, would recoup nothing. Permitting or encouraging behavior like Defendants' would quickly deplete health and benefit funds nationwide.

■ In enacting ERISA, Congress intended to "ensure that plan funds are administered equitably, and that no one party, not even plan beneficiaries, should unjustly profit." *Provident*, 906 F.2d at 993 (citing *Carl Colteryahn Dairy, Inc. v. Western Pa. Teamsters & Employers Pension Fund*, 847 F.2d 113, 122 (3d Cir.1988), *cert. denied*, 488 U.S. 1041, 109 S.Ct. 865, 102 L.Ed.2d 989 (1988)). With the aforementioned goal in mind, and based upon the record before it, the court concludes that equity demands that the Fund be reimbursed.

### C. *Amount of Reimbursement to Which the Fund is Entitled*

■ Having found that the Fund is entitled to reimbursement, the court must now determine the amount of money that the Fund may recover as restitution. Defendants argue that the Fund is only entitled to recover $15,254.26 of the $21,084.97 that was advanced. This amount reflects a reduction of $5,830.71 for attorney's fees and costs associated with the third party litigation undertaken on behalf of Defendant Jama Lynn Kurtz. It was the settlement of these third party claims that generated the monies from which the Fund seeks reimbursement.

Defendants cite *Dugan v. Nickla*, 763 F.Supp. 981 (N.D.Ill.1991), and *Serembus on Behalf of UIU Health & Welfare Fund v. Mathwig*, 817 F.Supp. 1414 (E.D.Wis.1992), in support of their contention that they are entitled to withhold attorney's fees and costs

---

**8.** As in *Harris Trust*, the third party exclusion clause of the summary plan places no legal duty on the Fund. Thus, although the summary plan expressly states that it will pay "no benefits whatsoever in connection with ... [i]njury or illness sustained as a result of the action of another person against whom you have a right to file a legal action," (Summary plan at 15), the Fund has discretion to elect to advance monies in appropriate situations. *See Harris Trust*, at 615.

related to Jama Lynn's third-party litigation. Defendants argue that had Jama Lynn not engaged an attorney and litigated the third party claims, there would be no monies from whence the Fund could seek reimbursement. Accordingly, Defendants believe that the Fund should bear a pro rata share of the cost of that third party litigation.

Plaintiff argues that Defendants are not entitled to the setoff for attorney's fees and costs. First, Plaintiff contends that the *Serembus/Dugan* approach is problematic because it "discourage[s] ... ERISA benefit plans from advancing benefits to those similarly situated to Defendants." (Pl. Reply Brief at 7.) Next, Plaintiff contends that the agreement signed by Mr. Kurtz expressly prohibits the very type of offset that Defendants request. Third, Plaintiff attempts to distinguish *Serembus* and *Dugan* on the ground that the subrogation clause in the instant case, unlike those in *Serembus* and *Dugan,* provides that the participant "shall do nothing after the loss to prejudice [the Fund's subrogation] ... rights." (Summary plan at 8.) Plaintiff equates the request for setoff with an attempt to prejudice the Fund's subrogation rights. Finally, Plaintiff contends that allowing an offset in the instant case would be contrary to this court's ruling in *Travitz.*

In the *Serembus* and *Dugan* decisions, the respective courts found that it was appropriate to reduce by reasonable attorney's fees the amount the beneficiaries were responsible for reimbursing the fund.[9] *See also Metro Health Systems . v. Glepko,* 980 F.2d 730 (6th Cir.1992) (unreported opinion) (table in reporter, text on Westlaw) ("Under the judgment, the fund would be entitled to collect up to the full amount of benefits paid or to be paid on Mr. Glepko's behalf, from the net of any litigation recovery less Mr. Glepko's attorney fees and costs expended in order to obtain the recovery.") Both the *Serembus* and *Dugan* courts maintained that without litigation of the third party claims, the fund would not have been reimbursed. In essence, the courts concluded that it was rea-

sonable to withhold attorney's fees and costs because through the beneficiaries' litigation the fund was better off than it would be otherwise.

The court finds no reason to depart from the existing legal precedent. There is merit in Plaintiff's contention that allowing a setoff may discourage ERISA plans from advancing funds to persons similarly situated to Defendants. The court, however, must balance this policy concern against the inequity that would result in allowing the Fund to reap the benefits of Defendants' third party litigation without sharing in the costs of that litigation. On the instant facts, the balance weighs in favor of the equitable considerations. Without Defendant Jama Lynn Kurtz's litigation, the Fund would be entitled to recover nothing. Because of her litigation, the Fund is recouping a substantial portion of the monies it advanced. Further, the court finds Plaintiff's argument regarding *Travitz* to be inapposite, as a potential setoff was not at issue in that case. Finally, because the court has already found the existence of a signed assignment of claim form to be irrelevant to the issues at hand, the court will not base any ruling on language contained in that document.

In ordering Defendants to reimburse the Fund, the court is respecting the desire of Congress "to ensure that plan funds are administered equitably, and that no one party, not even plan beneficiaries, should unjustly profit." *Travitz,* 818 F.Supp. at 771 (quoting *Provident,* 906 F.2d at 993). In allowing the sum to be reimbursed to be setoff by Defendants' attorney's fees and costs in the third party litigation, the court is ensuring that the Fund will not be unjustly enriched. The court will grant Defendants' motion for summary judgment and allow Defendants' to withhold $5,830.71 of the monies recovered for attorney's fees and costs.

## D. *Attorney's Fees*

 Finally, Plaintiff requests an award of attorney's fees and costs with respect to litigation of the captioned action. Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), provides that the court, in its

---

**9.** Indeed, a reading of both cases reveals that the *Serembus* court directly quoted the single paragraph of *Dugan* which addressed the setoff issue.

Further, the *Serembus* court offered no independent legal analysis of the setoff issue.

discretion, may award reasonable attorney's fees and costs to either party. There are five policy factors that the court must consider when determining whether or not to award attorney's fees under 502(g)(1). Those considerations are as follows:

(1) the offending party's bad faith or culpability, (2) the ability of the offending party to pay the fee award, (3) the deterrent effect of an attorney's fee award against others acting under similar circumstances, (4) whether or not the party requesting attorney's fees seeks to benefit all participants or members of the ERISA plan, and (5) the relative merits of the parties' positions.

*Ursic v. Bethlehem Mines,* 719 F.2d 670, 673 (3d Cir.1983); *Home for Crippled Children v. Prudential Ins. Co.,* 590 F.Supp. 1490, 1508 (W.D.Pa.1984). " '[A] district court considering a motion for attorney's fees under ERISA should ... apply its discretion consistent with the purposes of ERISA, those purposes being to protect employee rights and to secure effective access to federal courts.' " *Welsh v. Burlington Northern Employee Benefits Plan,* 54 F.3d 1331, 1342 (8th Cir.1995) (quoting *Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 589 (9th Cir. 1984)). Further, " 'A plan beneficiary who succeeds in an [ERISA] action ... should recover attorney fees unless "special circumstances" would make such an award inequitable.' " *Welsh,* 54 F.3d at 1342 (quoting *Lutheran Medical Center v. Contractors, Laborers, Teamsters, and Engineers Health and Welfare Plan,* 25 F.3d 616, 623 (8th Cir. 1994)).

The instant case is in many ways distinguishable from the existing case law in that the plan beneficiary did not prevail. Defendants were able to secure an advance payment of medical benefits from the Fund. Those payments enabled Defendant Jama Lynn Kurtz to obtain medical care prior to and during the pendency of her third party litigation. The ERISA plan functioned exactly as Congress envisioned, providing Defendant Jama Lynn Kurtz with supplemental health benefits. Indeed, Defendants themselves, and their unwillingness to part with the monies recovered in the third-party litigation, contributed substantially to the genesis of the instant litigation. That being said, the court cannot find that Defendants withheld the monies in bad faith. The Fund, by its own admission, gambled when it advanced the benefits to Jama Lynn Kurtz. Further, to the best of the court's research, the captioned action is a case of first impression. As such, it was not in "bad faith" for Defendants to vigorously argue their position.

Based upon the foregoing, and applying the five factors mentioned above, the court finds that Plaintiff is not entitled to an award of attorney's fees and costs. An appropriate order will be issued.

## IV. *Conclusion*

The court will grant in part and deny in part each party's motion for summary judgment. The court will grant Plaintiff's motion on the issue of reimbursement. Defendants will be ordered to reimburse the Fund for monies advanced to them. The court will grant Defendants' motion on the issue of setting off the amount of reimbursement by the amount of attorney's fees and costs in the third-party litigation. Finally, the court will deny Plaintiff's motion on the issue of attorney's fees and costs for the captioned action. An appropriate order will issue.